BERTCHE v. EQUITABLE LOAN AND INVESTMENT ASSOCIA-
TION OF MISSOURI et al., Appellants.

In Banc, December 23, 1898.

1. **Building and Loan Associations:** MATURITY OF STOCK. A building and loan association can not fix an arbitrary period of one hundred months within which the shares of its members shall mature. The maturity of the stock is not accomplished until the periodical payments made by its members and the gains from the investment of these, bring the stock up to par.

2. ———: ———: MUTUALITY OF LOSSES AND PROFITS. The fundamental law of building and loan associations is that all members must participate equally in the profits and bear the losses, if any, in the same proportion.   And all contracts that in any wise contravene this mutuality of burden and benefit are *ultra vires* and void.

3. ———: ———: ———: RECITALS IN MORTGAGE. When the recitals in a deed of trust, concerning the maturity of stocks, made by a borrowing member to a building and loan association, are in conflict with the statute and with by-laws made in conformity to law, the deed of trust must yield, and the stock will mature and the deed of trust can be foreclosed, not at the end of an arbitrary time mentioned in the mortgage for the maturity of the stock, but whenever, according to the by-laws, the periodical payments and their earnings bring the stock to be worth par.

*Appeal from Pettis Circuit Court.*—HON. GEORGE F. LONGAN, Judge.

AFFIRMED.

J. H. RODES and ROSS & BOHLING for appellants.

(1) The contract or obligation set out in the deed of trust providing for the payment of monthly dues and premiums, and further providing for release and satisfaction at the end of one hundred months, is legal and binding and in harmony with the statutes of Missouri and the by-laws of said association. R. S. 1889, sec. 2813; Lime City Building and Loan Ass'n v. Wagner, 23 N. E. Rep. 689; Sawyer v. Loan and Building Ass'n, 103 Mich. 228. (2) The statute does not in express terms authorize the association to make such a contract but such authority is clearly implied from section 1213, Revised Statutes 1889. So, also, by the by-laws. This view is confirmed by the fact that the estimated statutory period for maturity was afterwards raised to one hundred and twenty months. Sess. Acts 1895, p. 108, sec. 7; p. 110, sec. 13. (3) Public policy requires that contracts be kept; else companies calling themselves mutual may promise one thing to a subscriber and do something entirely different. (4) Under the contract in question, the borrower gets nothing but the satisfaction of his debt and the release of his deed of trust. If the association makes a profit it is divided between the prepaid and non-borrowing shareholder. Upon the cancellation of his debt at the end of one hundred months and the release of his deed of trust the borrowing member ceases to be a shareholder, *ipso facto*. (5) Where there may be mutual benefits resulting to all who hold shares in a building and loan association, the principle of mutuality can not be so applied as to place all shareholders on the same equality as to per cent of profit which may accrue to each for the following reasons: *First*. The statute permits and

the by-laws divide the shareholders into three classes, viz.: Holders of prepaid stock, non-borrowing shareholders and borrowing shareholders. *Second.* Pursuant to section 4, article 1, of the by-laws of defendant investors (those of the first class), were to receive an agreed rate of interest not exceeding eight per cent per annum. *Third.* Those of the second class are investors for the sake of accumulation and profit. *Fourth.* Neither the first nor second class pay any premium. *Fifth.* The third class subscribe for stock in order to borrow money at an agreed rate of interest, and for the privilege of borrowing they each pay a premium or bonus for the privilege, and by express contract waive all interest in the profits of the association. R. S. 1889, sec. 2813. (6) The shares in question had been redeemed by loans or advances thereon, and the deeds of trust in question should be released. R. S. 1889, sec. 2817. (7) The free or non-borrowing shareholders shall in no case receive any more than the face value of their shares less the average premium paid by the borrowers of the association up to date. R. S. 1889, sec. 2817. (8) In the case at bar the prepaid and non-borrowing shareholders have made a contract with the borrowing shareholder whereby he can not share in the profits, and they will not be permitted to repudiate said contract in the event of loss. *a.* Said contract is not *ultra vires.* It was clearly within the legitimate corporate business of said association. The question of *ultra vires* as affecting the validity of contracts of a corporation can be raised only by a direct proceeding by the State against the corporation and not in a collateral proceeding by an individual. St. Louis Drug Co. v. Robinson, 81 Mo. 18. *b.* Even if the appellants have exceeded its power in accepting the note or obligation and deed of trust in question, respondent is in no position to complain. The State alone, by a direct proceeding, can interfere in such a case, for an abuse of corporate power or excess of authority assumed by the appellants.

Hovelman v. Railroad, 76 Mo. 632; Broadwell v. Merrit, 87 Mo. 101; Ragan v. McElroy, 98 Mo. 349; St. Louis Drug Co. v. Robinson, 81 Mo. 26; Bank v. Matthews, 98 U. S. 621; Hotel v. Hunt, 57 Mo. 126. *c.* It is conceded that the borrowing shareholders have fully executed the contract on their part. The distinction taken between *ultra vires* contracts purely executory, and those fully executed on one side, is founded in reason. 27 Am. and Eng. Ency. of Law, 363 and 364; Bowman Dairy Co. v. Mooney, 45 Mo. App. 665, and the same doctrine is recognized and upheld in Winscott v. Investment Co., 63 Mo. App. 368. (9) *a.* Should said contract be held *ultra vires,* then the court will deal with the contract on equitable principles. Stiles App., 95 Pa. St. 122; 27 Am. and Eng. Ency. of Law, 363. *b.* The borrowing members were each required to pay eighty · cents per month per share bonus in addition to seven and two-tenths per cent interest on the money received, and $1 per month on each share held by them. The premium or bonus thus charged is usurious and together with interest thereon at the same rate the borrower was paying the association, should be credited on the principal of the loan. Brown v. Archer, 62 Mo. App. 227; Nat. Loan and Inv. Co. v. Stone, 46 S. W. Rep. 67.

BARNETT & BARNETT for respondent.

(1) The provision in the notes described in the trust deeds sought to be released, to the effect that the shares of stock pledged to secure said debts, shall mature and be entitled to redemption at the par value of $200, at the end of one hundred months, and shall then be canceled in full satisfaction of the borrower's note and deed of trust, should be construed as an estimated period at which said stock would mature, and not an absolute contract or guarantee that it should so mature. If such provision is to be construed as an absolute guarantee that the shares shall mature within

that length of time, and that said stock would be worth full
par value, then such stipulation in the note is void because
violative of the principle of mutuality between the share-
holders.   This association being mutual all the shareholders
are entitled to share equally in the profits, and must bear
equally the losses, and any agreement made by one member
with the board of directors, by which such member obtains
a greater share of profits than the other members, is void.
R. S. 1889, sec. 2817; King v. International Building Union,
170 Ill. 135; Weiman v. International Building, Loan
and Investment Union, 67 Ill. App. 550; Omally v. Peo-
ple's Bldg., Loan and Savings Ass'n, 36 N. Y. Sup. 1016;
Dickinson v. Continental Trust Co., 52 N. Y. Sup. 672
(a)   The law must be read into these contracts, and the con-
tracts must be moulded to conform to the law.   Latimer v.
Equitable Loan and Investment Ass'n, 81 Fed. Rep. 776.
(b)   A building association is a mutual concern, and is
bound to treat its members equally.   Any contract or by-law
made in contravention of such mutuality is void.   Kent v.
Quicksilver Mining Co., 78 N. Y. 159; Thompson on Corps.,
sec. 1011; Morawetz on Private Corps., sec. 367.   (c)   All
of the parties whose trust deeds are directed to be released
are members of the association.   Membership is acquired by
virtue of becoming owner of stock.   Endlich on Bld. Ass'ns
[2 Ed.], p. 39; Thompson on Bld. Ass'ns, p. 22; Robertson
v. Homestead Ass'n, 69 Am. Dec. 151.   (d)   Perfect mu-
tuality among all the members is the foundation on which
the whole scheme of these associations rests.   Endlich on
Bldg. Ass'ns [2 Ed.], par. 121; Ibid par. 331; Bosworth v.
Sumpter Real Estate Co., 100 Ga. 60.   (e)   The payment
by the borrower on his dues is not a payment on the debt, the
two must be kept distinct.   The payments on his stock are
simply investments.   They do not diminish the amount of
his interest.   Post v. Mech. B. & L. Ass'n, 37 S. W. Rep.
216; Endlich on Building Ass'ns [2 Ed.], secs. 331 and 332;

Kent v. Quicksilver Mining Co., 78 N. Y. 159; Thompson on Corps., sec. 1011; Morowetz on Private Corps., sec. 367. (2)   The authorities cited by appellant to the effect that the question of *ultra vires* as affecting the validity of contracts of a corporation can only be raised by the State in a direct proceeding, have no application in a case like this.   Fisher v. Patton, 134 Mo. 32.   (3)   The question of usury can not arise in this case.   No one is complaining of usury here. This is not a suit for an accounting in which the borrowing member pleads usury and asks credit for the amount of unlawful interest paid.   (a)   Although a bonus is illegal and usurious, it can not be credited on the loan.   Post v. Mech. B. & L. Ass'n, 37 S. W. Rep. 216.   (b)   The bonus was charged as a result of competitive bidding, and the statute provides that such premiums are not usurious.   R. S. 1889, sec. 2814.

ROBINSON, J.—This is a proceeding in equity, brought in the Pettis county circuit court, by the plaintiff as a stockholder, against the Equitable Loan & Investment Association of Sedalia, and the directors of said association, to enjoin the defendants from carrying out a resolution of the board of directors made in April, 1898, directing the release of certain deeds of trust given to the association by some twenty borrowing or advanced stockholders to secure the payment of loans or advancements on their shares.

There was a trial in the court below, resulting in a judgment enjoining and restraining defendants from carrying out said resolution and directing the annulment and rescission thereof.

Defendants, having unsuccessfully moved for a new trial, bring the case here by appeal.

The petition alleged, in substance, that the association was organized under the Revised Statutes of 1879 relating to building and loan associations, and that plaintiff is the

owner of twenty-five shares of free and unredeemed stock of said association, of the par value of $200 per share, issued in April, 1894, upon which the dues have been regularly paid, and that she has not received any advancements thereon; that under the statutes of Missouri governing associations of this character, the association loaned its accumulated funds to divers members thereof, upon the pledge of their several shares of stock; or, in other words, that the association redeemed the shares of such members in advance before they were fully paid up, by advancing to such borrowing members, who successfully bid in open meeting for the right of such priority or advancement, the full face value of their shares upon such borrowing members pledging their shares of stock to the association and executing their obligation in writing, whereby they agreed to pay the dues on their several shares of stock, and the interest and premium on the same so advanced, together with all fines and penalties, and thereupon such borrowing members secured the payment of their obligations by executing to the association their deeds of trust upon unincumbered real estate owned by them.

Plaintiff further alleges that the board of directors have unlawfully and wrongfully, and in violation of the rights of plaintiff and other free shareholders, caused to be made and entered of record the following resolution, to wit:

"Whereas, certain members, shareholders of the Equitable Loan & Investment Association, have received loans or advancements upon their shares of stock in the sum of $200 each, and upon which, by the terms of their respective deeds of trust, they have paid the full amount of their dues, interest and premiums, the same being for the full term of one hundred months from the date of their respective certificates of stock, as in their respective deeds of trust provided.

"And, whereas, each and all of said members, hereinafter mentioned, have fully complied with the requirements

as set forth in their obligations and agreements made with this association, and have complied with the provisions of their deeds by payment of the amounts set forth therein, as due thereunder, and,

"Whereas, each and all of said members, after said compliance with the terms of the respective obligations, have formally demanded of this association a release of their respective deeds of trust, and cancellation of their stock, in satisfaction thereof, and have made tender of the proper funds for the release thereof.

"Therefore, be it ordered by the board of directors of said Equitable Loan & Investment Association that the president of said association be, and he is hereby, ordered forthwith to execute quitclaim deeds to each and all of the hereinafter mentioned members, or to enter satisfaction on the margin of the record as required by law, releasing their respective deeds of trust given to secure each and all of said obligations, and in full discharge thereof.

"And be it further resolved, that the loss, if any, sustained by said association on account of said shares of stock not having earned their face or maturity value, upon which said loans or advancements were obtained, be, and the same is hereby ordered, to be equally charged to all of said non-borrowers or free stockholders in said association and such borrowing members who do not hold definite contracts for the maturity of their loans, and that the same be borne by and equally distributed and apportioned to all the free and non-borrowing stockholders in said association in proportion to the number of shares held by each."

The plaintiff next alleges that the directors of the association propose and intend to carry out said resolution and release the deeds of trust therein referred to, notwithstanding the shares of such borrowing members have not earned the full face or maturity value thereof. The petition further alleges that the shares of such borrowing mem-

bers have only earned, and consequently are only worth, the sum of $141.14 per share, and that if the deeds of trust given by such borrowing members are released and their notes canceled, then such borrowing shareholders would receive upon their shares $58.86 per share in excess of their actual value, thereby causing a resulting loss to the association in the amount of such excess, which loss would fall upon and be borne wholly by the plaintiff and other free shareholders similarly situated; and that the contemplated act of the directors is an unjust and unwarranted discrimination in favor of such borrowing shareholders, and against the rights of the free and unborrowed stockholders, and violative of the rights of mutuality between the respective members of said association.

It is further alleged that all of the deeds of trust sought to be released contain clauses providing that the same shall be released at the end of one hundred months, providing the dues, interest and penalties thereon shall have been paid for the full period of one hundred months, which provisions, it is claimed, is *ultra vires* and void and in violation of the principles of mutuality between members, and in violation of the statutes of this State governing building and loan associations; and that the directors had no power to make such contracts with its borrowing stockholders; and that there was no by-law of said association authorizing the making of such contracts; and that in causing such provisions to be inserted in the deeds of trust in question the directors acted beyond the scope of their authority, to the injury and prejudice of the plaintiff and other non-borrowing members of the association.

The petition prays that the defendants be enjoined and restrained from carrying out the provisions of said resolution and releasing the deeds of trust and other obligations of such borrowing stockholders until their shares of stock shall have reached their full face or maturity value, not-

withstanding their deeds of trust provide that their shares of stock shall be deemed to have matured at the end of one hundred months.

After admitting that the shares of stock pledged by the borrowing members had not reached their full face value at the expiration of the one hundred month period, the answer, among other things avers, in substance, that if said contracts were beyond the power of the association to make, then and in that case the contract made and entered into as aforesaid, would under the statute, be usurious and subject the association to a greater loss than to carry out the same according to their terms.

It was further averred that if the association is enjoined from releasing the deeds of trust in question that it will be compelled to defend a greater number of suits in different circuit courts in this State and put to great expense and cost of litigating with a large number of borrowers who hold like definite contracts.

The answer further avers that if said contracts were not valid and binding upon the association, then the loan in question was usurious for the reason that the by-laws of the association provided that the accumulated funds of the association should be loaned at a minimum premium, and that all of the loans or advancements in question were made in pursuance of such by-laws, and that during the entire period of one hundred months such borrowers had paid such fixed and stated premiums, and if the association was enjoined from carrying out its contract in this regard, the association would be compelled to account to such borrowers for the entire amount of interest, premium and dues paid by them during the existence of their loan, which amount would greatly exceed the amount due on the money borrowed, and the association compelled to pay the same, thereby sustaining much heavier losses than would be suffered by the

free shareholders if the officers of the association were permitted to carry out the resolution.

The reply was a general denial.

The deeds of trust ordered released by the resolution in question were executed in 1890, to secure loans or advancements to the several borrowers named in the resolution. These advanced members have paid their monthly dues, interest and premium for the full period of one hundred months, as required by their contract, but their shares of stock have not yet matured or reached their full face value, being worth only $141.14 per share. Consequently if the resolution is carried out and the deeds of trust released there will be a resulting loss to the association of $58.86 on each remaining share of stock therein, which must be borne wholly by the free and non-borrowing stockholders. All the deeds of trust covered by such resolution, together with the obligations secured thereby, contain the following provision, to wit:

"The payment of said monthly sum of —— dollars, being the monthly dues, interest and premium for the full period of said one hundred months, and of all fines and penalties, shall entitle each of said shares of stock to redemption by said association at the par value of $200 each, and the said shares so entitled to redemption shall, at the end of said hundred months, be taken and canceled by said association in full satisfaction of this obligation and of the deeds of trust given to secure the same; in consideration of which said redemption of said shares of stock and the satisfaction of this obligation and said deed of trust at said end of one hundred months, we do hereby waive and release all other or further right, interest and benefit in or to the profits and earnings of said association, and hereby transfer and assign the same to said association."

The above contract appearing in the deed of trust is the basis of defendant's contention that the deeds of trust

should be released at the expiration of one hundred months, regardless of the fact that the stock so pledged had not matured.

The plaintiff is a non-borrowing stockholder, holding twenty-five shares of stock in the association of the par value of $200 each, having subscribed therefor on April 20, 1894.

The borrowing members, mentioned in the resolution directing a release of their several deeds of trust, having paid all their monthly dues, instalments and premiums in accordance with the terms of their obligations for the period of one hundred months, applied to the association for a release of their deeds of trust and the cancellation of their pledged shares, but the association refused to satisfy and cancel same. Thereupon several suits by borrowing stockholders were instituted against the association in different circuit courts throughout the State to obtain decrees canceling their notes and deeds of trust. Certain of said cases having been decided adversely to the association the resolution adverted to was passed by the board of directors of the association, but before it had been complied with by the officers of the association this action was commenced to enjoin defendants from carrying out the provisions of the resolution and to restrain the directors from entering satisfaction of such deeds of trust at the end of the one hundredth month.

The evidence shows that the shares of stock pledged by the borrowing members, whose deeds of trust are sought to be released, have not matured, but on the contrary are only worth $141.14 per share. It further appears that it is utterly impossible to carry out the agreement to mature these shares in one hundred months, and also to mature the shares of plaintiff and other free shareholders containing a similar provision as to the time of maturity.

The plaintiff contends that the special clause contained in the note and deeds of trust under consideration, providing for a release thereof at the expiration of a period of one

hundred months from their date, regardless of the maturity of the stock, is *ultra vires* and void, and in violation of the statutes of this State governing building and loan associations, and that such clause is violative of the principle of mutuality between the stockholders contemplated by the statute, and beyond the power of the association.

These contentions raise the question whether the statute of Missouri governing building and loan associations, and the by-laws of the association passed in conformity therewith, must be treated as forming a necessary part of the contract, and the borrowers' obligations made to conform therewith, or whether the acceptance of the borrowers' notes and deeds of trust containing the special clause in question is binding upon the association, regardless of its earnings, especially, where, as is this case, these provisions can not be carried out without entailing a loss of $58.86 upon the free and non-borrowing shareholders. In other words, whether the contracts as written should prevail, or whether the statute then in force should be so read into the contract as to prevail over its language.

Section 2812, Revised Statutes 1889, in regard to building and loan associations provides that the directors of the associations shall hold stated meetings at which such sums of money as may be determined shall be offered for loan to all the members in open meeting. The shareholder who shall bid the highest for the preference or priority of the loan shall be entitled to receive the loan whose amount shall not exceed the number of shares of stock held by such shareholder multiplied by the par value thereof. Good and ample security shall be given by the borrower to secure the monthly payments contracted to be made by him.

Section 2813, provides that a borrower may repay a loan at any time. In case of the repayment of the loan before the expiration of the one hundredth month after the organization of the corporation there shall be refunded to such

borrower one per cent of the premium paid for every month of said hundred months then unexpired.

Section 3, article 1, of the by-laws of the association, provides as follows: "Upon each and every share of stock there shall be paid as follows, viz., upon shares of $200 each the sum of $1 per month, and upon shares of $100 each the sum of fifty cents per month, and upon shares of $400 each the sum of $2 per month, as dues until the dissolution of the association or the maturity of the series in which said stock shall be issued."

By section 3, article II, it is provided that at each monthly meeting of the association the funds on hand shall be offered for loan, and the shareholder who bids the highest premium per share for the preference or priority of the loan shall be entitled to receive the par value of the stock, less the amount of said premium.

Section 5, article II of the by-laws, provides that before receiving said loan the borrower shall submit a full description of the property offered as security for the same, etc., and upon acceptance of such security by the board of directors, shall execute his note for the par value of said stock so bid off or redeemed.

By section 6, article II, of the by-laws, it is provided that the condition of said note shall require the payment of monthly dues on the shares so redeemed, and the monthly payment of interest on the face value of said note at the rate of seven and two-twentieths per cent per annum. And section 7 provides that a deed of trust shall be executed on the borrower's property to secure compliance with the conditions of his note, and also the performance of all obligations imposed upon him by the rules of the association.

The significance of the statute and by-laws referred to is apparent. Neither the statute nor the by-laws authorize the fixing of a period of one hundred months at which the stock shall reach its par value. At best it is but a mere

estimated period within which the stock will mature, and in no sense of the word a guarantee that the shares should mature within that length of time, and is applicable only in determining the amount of premium to be returned to the borrower who repays his loan before the expiration of the one hundredth month from date of loan. Under this section, if the borrower repays his loan before the expiration of the one hundredth month he receives back a certain per cent of the premium paid. It was never contemplated that this section should have the effect of maturing the stock at the expiration of one hundred months, regardless of the earnings of the association. If the statute governing building and loan associations, and the by-laws passed in conformity therewith, fixed no definite or arbitrary period at which the shares shall reach their par or maturity value, for a greater reason the association, a mere creature of the statute, can not fix an arbitrary period of one hundred months or any other time within which the shares of its members shall reach maturity.

The law governing the formation of building and loan associations contemplates a scheme for paying the capital stock in instalments, so long as such periodical payments, taken in connection with its other income arising from fines, dues, interest and profits, are necessary in order to bring the stock up to par. This value represents the amount which the shares are expected to be worth, when, together with the profits upon investments, etc., it has accumulated to the amount contemplated at the outset. The actual value of the share may be very small indeed during the first years of the association's existence. But the par value is fixed from the beginning. The association may be said to have accomplished the purpose of its organization when by the periodical payments made by its members, and the gains therefrom, each member has paid up to the amount fixed by its charter. [Endlich on Bldg. Assn's (2 Ed.), sec. 12.]

It is a well settled proposition that the transaction between the association and its members is not a loan in a direct sense of the word, but only a prepayment or advancement to the shareholders of that to which he will ultimately be entitled.   When a borrower pays a premium on account of an advancement made on his stock his agreement is that he will at the time of making the loan sell to the association his prospective interest therein for such percentage, less the par or paid-up value of his stock as he may at the time of such advancement agree to pay.   That is to say, he sells his prospective interest to the association for par if he has no competitors, but if there are others bidding for competition with him for preference and priority, then he sells his prospective interest for such a sum as he is forced by competition to deduct therefrom.   The transaction is regarded then in the light of a sale by the borrower to the association of his prospective interest, the association paying him at a time when he needs the money, the amount which would be due him at the time of the dissolution of the association in the ordinary course of business. Endlich on Building Associations [2 Ed.], section 331, in speaking of the advancements of the association to its borrowing members, thus states the rule: "As to the repayment of the principal, the design is most simple.   The member, bound by his original contract with the association to make stated periodical payments of fixed amounts,   strengthens   his   undertaking,   to   the   greater security of the association which has parted with its funds to him . . . . . . . by mortgaging his property as a pledge for such discharge to the end of the society's existence. . . . . . . . The member, mindful of the impossibility of evasion, continues to pay his regular dues.   These, together with all similar payments made by the other members, and together with all the revenues from whatever sources flowing into the society's coffers, are added to the common treasury and again made the means of securing new profits, until the

period arrives when the association is ready to wind up. The shares, his own interest in the society's accumulations, have now reached their contemplated value. But the borrower has anticipated that result, and in so doing has given the association the right to make itself whole, to reimburse itself not only for what it has given him, but also for what he has agreed to add to that amount by way of premium offered, out of the sum standing to his credit as a member of this society. That sum is necessarily the amount he has received, plus the premium he has bid. The society appropriates this and the principal is repaid."

Again at section 338, the same author says: "Whatever is paid by the borrower by way of premium, interest, dues, fines, etc., becomes a portion of the common fund, and being reinvested adds its profits to the great bulk in which he has a proportionate interest; and these being again reinvested, and so on *ad infinitum,* continue to swell the assets of the association until in due course of time, distribution can be made, and advanced members may be relieved of their obligations. Thus the borrower himself profits by his own payments."

The question as to the rights and obligations of the stockholders and the association has received much consideration of late in several of our sister States, and the trend of the more recent decisions is that any contract made by such an association in contravention of the statute and its by-laws is *ultra vires* and void.

All members must participate equally in the profits and bear the losses, if any, in the same proportion. This is the fundamental law of building and loan associations organized under the different statutes throughout the Union. The provisions in the borrower's notes and deeds of trust sought to be released, to the effect that the shares of stock pledged to secure their payment shall reach their full par value at the end of one hundred months and the securities canceled and satisfied regardless of the earnings of the association,

is clearly subversive of the legislative scheme governing
building and loan associations and contrary to the clear
letter and spirit of our statutes.   The plan which seems to
have been adopted by the association in respect to the loans
in question is glaringly prejudicial to the non-borrowing
members, and its enforcement will work a great injustice
and hardship.   Besides it would be inequitable and unfair.
The rights of the borrowers must be determined from the
standpoint of their relation to the non-borrowing stock-
holders.   The former voluntarily applied to and became
members of the association, and the by-laws not repugnant
to the statute are binding upon them as well as upon the
other members of the association.   One who becomes a
member of an association becomes chargeable with the
knowledge of the provisions of its charter and by-laws and
is bound by them.   He can not be ignorant of them, nor
can he refuse obedience to them unless indeed they are illegal
or require the performance of acts which the law forbids.  By-
laws not illegal, and not requiring the performance of acts
contrary to law, must therefore be deemed binding upon all
persons who become members.  [1 Beach on Private Corpora-
tions, sec. 321; Endlich on Bldg. Ass'ns, sec. 271; Mechanics
& Traders L. & B. Ass'n v. Vierling, 66 Ill. App. 621.]
The provisions of the by-laws, as already seen, provide for
the payment of dues, interest, etc., by stockholders until such
time as their shares shall mature and the stock be worth
its full par value.   And if the borrowers did not read the
by-laws it was their fault.

The association being organized under a mutual plan
must treat all of its members equally, and any contract
whereby one stockholder obtains greater share of profits
than another would be violative of the principle of mutuality
between the stockholders.   The plainest principles of jus-
tice and honesty clearly forbid that one class of stock-
holders equally meritorious should be compelled to suffer

that others may profit thereby. In the last reported case to which we have been cited on the subject, King v. International Bldg. Loan & Inv. Union, 170 Ill. 135, the court there holds, that a building and loan association, organized and based on the mutual plan, requiring subscription to its capital stock to be made in periodical payments, which should continue until the payments, together with the earnings of the association should equal the full face value of the shares, has no authority to issue a certificate of stock wherein it agrees to pay the subscriber the full face value of each share at the end of six years, on payment of seventy-five per cent per month on each share during said period. In the case of Wierman v. International Bldg., Loan & Investment Union, 67 Ill. App. 550, the appellate court of Illinois held that a building and loan association is a mutual company and bound to treat its members equally, and any contract made by such association in contravention of such mutuality is *ultra vires* and void. To the same effect is Baltimore B. & L. Ass'n v. Powhatan Imp. Co., 39 Atl. Rep. 274.

The same conclusion was reached by this court *in banc* in the recent case of Fisher v. Patton, 134 Mo. 32. In that case Fisher, a stockholder, sought to enjoin the directors of the Richmond Building & Loan Association from releasing certain deeds of trust given by borrowing members to secure advancements made on their shares of stock, and from releasing other securities held by the association, and to prevent the association from discontinuing the collection of its interest, dues and penalties from the stockholders until the assets of the association were sufficient to enable each share of stock to be matured by obtaining its par value of $200. The court held that any stockholder could maintain a suit to restrain the directors of the association from closing out a series of shares before its maturity, and from releasing securities of borrowing members, and other acts

tending to prevent the stockholder's shares from obtaining their full par value. Building and loan associations, as already seen, are created for certain purposes, and there is an implied contract with its members that it shall not divert its funds or powers to other purposes. Such diversion would be violative of the statute under which it was organized, as well as the principles of mutuality between the members.

In the case of Ins. Co. v. Leslie, 24 N. E. Rep. 1072, a question of relation to the waiver by agreement found in the policy of certain statutory provisions was considered. Referring to these provisions the Supreme Court of Ohio says: "These sections were in force when the policy in suit was issued and entered into, and became a part of the contract of insurance, fixed the measure of obligation created by it and controlled its construction and operation . . . The statute rests upon considerations of public policy. . . . The statute can not be treated as conferring upon the insured a mere personal privilege which he may waive or qualify by agreement. It has a broader scope. It molds the obligations of the contract into conformity with its provisions, and establishes the rule and measure of the insurer's liability." To the same effect is Havens v. Ins. Co., 123 Mo. 416; Daggs v. Ins. Co., 136 Mo. 382; Reed v. Painter, 129 Mo. loc. cit. 680.

In Wall v. Equitable Life Assur. Society, 32 Fed. Rep. 273, the question arose whether the statute of this State providing that a policy of insurance should be non-forfeitable after two annual premiums had been paid should prevail in a suit on a policy (executed in this State while this statute was in force) which by its terms required the payment of three annual premiums before the policy became non-forfeitable. In other words, the question is very similar to the one raised by this record, that is to say, whether the provisions of the borrowers' obligations and deeds of trust

should prevail, or whether the statute and by-laws then in force should be so read into the contracts as to prevail over the special clause above mentioned. Mr. Justice BREWER, who wrote the opinion, said: "It was evidently intended by its (the State's) legislation to provide a fixed and absolute rule applicable in all cases—absolute and universal, because if it applied only in cases in which the policies were silent, or if it could be waived or changed, a child can see that it would protect only so far as the insurance companies were willing. So, although no words of penalty are attached, no express denial of the right to waive, in fact no words of negation in any direction, yet it seems to me fair to say that the affirmative language of this statute discloses a public policy which no court ought to question or refuse to enforce. The legislature has by this language declared a rule in respect to forfeitures in life insurance policies; it has thus established the policy which it believes should obtain in this State, and it is my duty to administer the laws of this State in the spirit in which they were enacted, and to uphold both their letter and their spirit."

In the case of Latimer v. Equitable Loan & Investment Company, recently decided by the United States Circuit Court for the western district of Missouri, and reported in 81 Fed Rep. 776, the question arose whether the statute of Missouri permitting a member to withdraw at any time was to be treated as forming a necessary part of the contract, or whether the acceptance of a certificate with a clause curtailing the right of withdrawal to a period of less than one hundred months from its date is binding upon a stockholder, and the court held that the statutory right of ending the stockholder's relation to the association by withdrawal was a fundamental right evidencing a public policy which can not be waived or contracted away by any one or more members of the association and that the plaintiff in that

case, having given the requisite notice, was entitled to recover the amount paid on his stock, notwithstanding the terms of his certificate postponing the exercise of this right until an unexpired term of one hundred months shall have elapsed. It seems to us that this case is exactly in point.

The question here was not involved in Sawyer v. Menominee Loan & Bldg. Ass'n, 103 Mich. 228, and like authorities cited by defendants in support of their contention. That case bears little or not at all upon the question here; besides it was decided by a divided court. In that case the secretary of the association in setting forth the advantage to be gained by a borrower, among other things represented that such borrower could pay a loan at any time, at the end of any quarter, and could settle on the basis of the loans being canceled in eight years, and at one-eighth thereof each year, taking the actual money loaned as the basis, and, so far as settlement was concerned, disregard the premium for the loan. The secretary explained that the association could do this because of the advantages it had in compounding interest monthly and receiving interest on instalments and premiums, and that the right to settle on this basis was guaranteed by the by-laws. Whatever may be the justification of the Michigan court for its treatment of the question the rule announced in that case has no application to the altered facts presented by this record. Here there was no representation of facts fraudulent or otherwise, while in that case the secretary went further than merely expressing his opinion as to the outcome of the loan under the by-laws of the association as a result of its financial operations, and made the distinct representation, on which the borrower acted, that the premium bid for the loan might be disregarded by the borrower in liquidating his indebtedness.

In the light of the foregoing authorities, we think that the provisions of the notes and deeds of trust in question

are in contravention of the chartered powers and by-laws of the association, and subversive of both the letter and spirit of the legislative scheme governing building and loan associations in this State, and beyond the powers of the board of directors.

No question as to the usurious character of the loan under consideration properly arises in this case, as appellants contend, but if it did and was for determination, but one conclusion could be reached on the facts disclosed by the records herein. Notwithstanding the positive allegations in defendant's answer, "that in the by-laws of the association it was provided that the accumulated funds of the association should be loaned at a fixed minimum premium and that all the loans or advancements in question were made in pursuance of said by-law," the secretary of the association when testifying at the trial in this case, says, that each and every loan made by the association to its borrowing members was upon competitive bidding in open meetings, and that the by-laws of the association provide and require all bids for money to be so made. A copy of the by-laws to that effect was also offered and read in evidence. The facts as disclosed by this record, show conclusively, that the loans to the borrowing members was not usurious.

It follows from what has been said that the judgment of the circuit court should be affirmed. GANTT, C. J., BURGESS, WILLIAMS and MARSHALL, JJ., concur; BRACE, J., not sitting.