Gunter, J.
Appellant, a building and loan association incorporated *424 under the laws of Colorado, by a soliciting agent, Williams, requested appellee to become one of its shareholders. He gave appellee a circular which contained information in detail as to the terms of membership. This, appellee read through carefully before subscribing. A copy of appellant’s by-laws was also left with appellee. Thereafter, March 19, 1890, appellee, on a printed form, signed by him, made application for membership in appellant corporation. In this application he promised to comply with all the rules and regulations of the association. March 31, 1890, a certificate of stock was issued to appellee for ten shares of the capital stock of appellant, reciting that it was “subject to all conditions, rules, regulations and by-laws ” of appellant. June 26, 1890, appellee, as a shareholder in appellant, by application signed by him, solicited of appellant a loan of $1,000. The application stated that loans were only made to shareholders; further, that, “ when the stock matures it pays the loan.” The loan was approved, and on July 29, 1900, appellee executed his note, promising thereby to pay appellant on or .before six years, “ one thousand dollars with interest and installments according to the by-laws of the association, payable on or before the fifth day of each and every month.” The ten shares of stock were assigned to secure the loan, and as additional security a trust deed given upon real estate of appellee.
Appellee contends that appellant represented to him that the payment of a definite number of installments and a definite amount of interest at fixed times would mature the ten shares of stock hypothecated to secure the loan, and that such stock when matured would work a satisfaction of the loan; that- induced by and relying upon such representations, he subscribed for the stock, and. took the loan, that he has since made the payments required by such representations. Having so performed, appellee asks a decree canceling the note, the certificate of stock, and that a foreclosure of the trust deed be enjoined. This relief the lower court granted.
Appellant denies that it made these representations and *425 says : 1. That it represented to appellee that the maturity of the stock subscribed by him would work a satisfaction of the loan, that such stock would be matured when such stock, through payments made the association by shareholders and profits of its business should be of the value of $1,000, that is, when the amount in the loan fund to the credit of each of the ten shares of stock held by the appellee is $100, that as the stock has not reached such value, the loan is not paid. Further, that as appellee declines to make further payments on the loan, appellant is entitled to foreclose the trust deed securing the same.
The circular carefully read by appellee advised him of the limitations on the powers of the soliciting agent Williams in this language: "No representative, agent or officer of the association has any power to waive or alter any of the conditions or terms expressed in the printed literature of the association.”
Endlich on Building Associations, says, at § 232, “ Where the limits of an agent’s authority are set forth in a manner necessarily coming under the observation of the other party to a contract in which the agent exceeds those limits, the party dealing with the agent is bound to take notice of such limits.”
The printed literature other than the circular, which came into the hands of appellee before the loan, consisted of by-laws, apjfiication for membership, certificate of stock, application for the loan, note and the trust deed. This literature did not contradict or add materially to the representations in the circular.
Does this circular state as a fact that a definite number of payments made at fixed times will mature the stock ? On the contrary, does it not appear therefrom that the stock will mature when the monthly payments of the shareholders, and the profits of the business, render the amount in the loan fund to the credit of any share equal to $100 ?
It appears from the history of the negotiations leading up to appellee’s subscription for stock and the subsequent loan, that appellee had ample means of acquainting himself with *426 the enterprise into which he was embarking. The law charges him as a shareholder with notice of the articles of incorporation and the by-laws.
“ One who becomes a member of an association becomes chargeable with the knowledge of the provisions of its charter and by-laws and is bound by them.” Bertche v. Equitable Loan and Investment Assn. of Mo., 147 Mo. 343.
The circular states that appellant association “ is a mutual co-operative society incorporated under the laws of Colorado; ” that “any person may become a shareholder; ” that its capital stock consisted of- small monthly payments by its shareholders ; that “ loans can only be made to shareholders ;” that “ the borrower must carry shares of the association equal in value at maturity to the amount of his lohn;” that “ once in three months the profits arising from interest, fines and other payments are divided among the shares in good standing. All members receive the same per cent of profits as the dividends are declared on the entire business; ” that a loan is paid when the stock which the borrowing member is required to carry shall have matured; that stock is matured when the amount in the loan fund to the credit of each share is $100. It is further stated that the shares are estimated to mature in six years from their date. From this circular it appears that the shareholders of appellant united in a business venture for their mutual benefit, all shareholders to profit, or lose, in proportion to their respective shares of stock, their respective interests at any time in the association, being in proportion to their stock; the value of their stock depending upon the financial success of the corporation; the future value of the stock being uncertain because dependent upon unknown factors that might enter into the future operations of the corporation. This circular stated facts from which it appeared that no one could state when the stock would mature; an effort to do so could not be other than an estimate. The lower court was not justified in finding that appellant represented that the stock issued to the appellee would mature in any definite time. With the circular before him “ carefully *427 read ” the appellee was not justified at the time of subscribing for the stock, or obtaining the loan, in believing that the future date of the maturity of the stock could be fixed with definiteness.
Appellant further contends:
2. That it did not have the power to contract with appellee that the stock held by him would mature atanjr definite time. The controlling principle of appellant association is mutuality among its shareholders; all shareholders must fare alike; one shareholder cannot profit at the prejudice of another. Appellee was entitled to have his stock mature when the business of the association matured it, that is, made it of the value of $1,000. To- receive $1,000 for it earlier than maturity would require its being matured at the expense of other shareholders, which would be in violation of the contract of mutuality entered into between the shareholders in forming the corporation. With this contention we agree, it being in harmony with the objects. and powers of the corporation, and sustained by a decided weight of authority.
In Bertche v. Investment Association, supra, the association contracted with certain of its shareholders that the payment of dues, interest and premiums for a definite period should work maturity of their stock and satisfaction of their loan. The shareholders having made the payments, demanded a release of the deeds of trust securing the loans and a cancelation of their stock; certain other shareholders proceeded in equity to enjoin the corporation from canceling the notes and stock and releasing the trust deeds, contending that the corporation had no power to contract to cancel the stock or notes until maturity of the stock; that as the stock had not matured, the corporation had no power to cancel the stock or notes or release the trust deeds. The court sustained the contention of petitioning shareholders, saying: “ All members must participate equally in the profits and bear the losses, if any, in the same proportion. This is the fundamental law of building and loan associations organized under the different statutes throughout the Union.”
*428 “ The association being organized under a mutual plan must treat all its members equally, and any contract whereby one shareholder obtains a greater share of profits than another would be violative of the principle of mutuality between the stockholders. The plainest principles of justice and honesty clearly forbid that one class of stockholders equally meritorious should be compelled to suffer that others may profit thereby.”
In Campbell v. Eastern Building & Loan Association, 37 S. E. Rep. (Va.) 350, the court held that a building and loan association could not make a contract with a shareholder that the stock subscribed would mature in a definite time. “ The members of the association have united together in a business venture for a common benefit. It is a mutual association, and equality of right according to the interest of each member is the fundamental idea upon which it rests. The definite contract was made, doubtless, in good faith by both parties, but appellant had no legal right to rely upon such a consummation. He was talcing chances with his fellow shareholders that the earnings would be sufficient, in the time specified, to declare, not his alone, but all stock matured.” See also King v. International Building Union, 170 Ill, 135 ; Wierman v. International Building Loan and Investment Union ; 67 Ill. App. 550 ; The Baltimore Building and Loan Association v. Powhatan Improvement Co. et al., 87 Md. 59; Eversmann v. Schmitt, 53 Ohio St. 174.
The Ohio case was recently followed by the circuit court of the United States for the district of Wyoming, Judge Riner sitting, in the case of The Columbia Building and Loan Association v. William Jungquist and Marie Jungquist, 111 Fed. Rep. 645.
Authorities are cited as contra, some of which can be distinguished from the conclusions here reached, others cannot. It would be of no service to review them at length. The judgment will be reversed with instructions to the lower court to dismiss the action.

Reversed.