Maxwell, J.
Angnst 1, 1893, appellee, plaintiff below, purchased certain real estate, upon which there was a deed of trust to secure a note for $1,350.00, with interest at ten per cent, per annum, payable monthly, appellant association payee:
The note was dated March 11,1890, signed “Harriet N. Baskerville, who on that date subscribed for seven shares of stock in appellant association, which stock was assigned to the association as additional security for the loan.
Mrs. Baskerville sold the property and assigned the stock to Arietta Glass, who sold and assigned to appellee.
At the time appellee purchased the property a pass book was delivered to her upon which her name was written, in which was printed the constitution of the association.
Sec. 3, Art. 3, is: “Each and every stockholder, for each and every share of stock he may hold in this association shall pay the sum of $1.00 on or before the 20th day of each and every month thereafter to the secretary of the association until the value of the series of stock in which his shares belong shall be sufficient to divide to each share of stock of said series the sum of $200.”
At the annual meeting of the association, held *289 March 3,1893, previous to appellee’s connection with the association, this section of the constitution had been amended to read:
“Each and every stockholder for each and every' share of stock he may hold in this association, shall pay the sum of $1.00 on or before the 20th day of each and every month thereafter to the secretary of the association for the period of 100 months. Each series of stock shall mature at the expiration of 100 months from the date of its issue, and the entire net assets of said dues shall then be divided pro rata among the stockholders according to the number of shares held by each; said division to be made as soon as practicable after the maturity of said series of-stock. ’■’
This pass book disclosed that August, 1893, 42 monthly payments of $7.00 each on “stock” and $11.25 on “premiums and interest” had been made.
Appellee continued the monthly payments until and including June, 1898, 58 months, when 100 such payments had been made and entered in her pass book.
Over the objections of appellants, appellee and her husband were permitted to testify, in substance, that previous to maiding the purchase and for the purpose of being advised as to the- then condition of the loan, the title to the property, and the stock, they visited the office of the association, and were informed by the officers thereof that when appellee had made the remaining number of 100 monthly payments of $18.25 that the trust deed and note would be paid and discharged, and that the party then owning the property would receive from the association a release of the deed of trust and a further sum of $50.00 cash. In other words, they were allowed to testify, that it was stated and represented to them by the officers of the association that upon the payment of 58 monthly *290 payments of $18.25 each, the loan would be satisfied; that relying upon such representations, appellee purchased the property.
Having made such payments, and in all respects having complied with the representations and assurances made to her by .the officers and agents of the association, she demanded that the deed of trust be released.
The officers of the association deny having made such statements and representations to appellee, and testify that it was “explained to appellee and her husband that if the proceeds of the association equalled $200.00 per share they would get it all; if it did not, it would be divided proportionately and that the balance, whatever there was, would be against the property. ’ ’
The association was unincorporated. Its scheme, as shown by its constitution (copy of which was given appellee at the time she purchased the property), was similar to that of like associations, mutual in character, each stockholder being entitled to share equally in the profits.
The court found that the plaintiff had fully paid and discharged the lien created by the deed of trust according to the representations and assurances made to her by the officers of the association, and was entitled to have the same released and discharged and so decreed.
These findings and decree can only be sustained upon the theory that appellee’s testimony was correct, and that the association was estopped to deny the statements and representations in this behalf, of its officers.
The law of this subject has been settled by this court in Columbia Building & Loan Association v. Lyttle, 16 Colo. App. 423, wherein it is held that a mutual building and loan association has no power *291 to contract with the shareholder that his stock will mature in a definite time.
The association having nó such power, it necéssarily follows that the statements and representations made by the officers of the association are without effect.
Appellee contends that the amendment of sec. 3, art. Ill, of the constitution of the association, as set forth above, took away from her the right to pay the loan in the manner indicated by the constitution before its amendment, of which change in the constitution she had no notice, and therefore she was released from any obligation to pay the loan, and cites in support, Thompson on Corporations, § 8796.
Judge Thompson in the section cited, discussing the “effect of dissolution or abandonment as to borrowers,” says:
“But, on the other hand, the hardship and increased expense of settlement which may result from requiring the borrower to pay-back all that he has received without any credit for the dues he has paid in, remitting him to final distribution for a return of the excess of his payment oyer what shall be found justly due from him, would seem to indicate the propriety of a third method, wherever practicable, viz., to ascertain what the receipts, profits and losses of the society have been, what its liabilities are, what available assets are on hand, and what, accordingly, is the present real value of every share, making-allowance for the expenses of settlement; to credit that amount on the borrower’s debt, in respect of each share held by him; and, charging him with the sum actually advanced to him and interest, reduced by part payments of interest and premiums, collect from him only the balance.”
The method outlined by Judge Thompson was pursued in the case at bar.
*292 August 3, 1898, the husband of appellee, who was authorized to act for her in the matter, made a settlement with the association. The seven shares of stock were surrendered at their matured value of $805.00, which was the value of all the stock of the series to which they belonged; that amount, less certain dues to the association, was credited upon the loan; appellee, through her agent, agreeing to pay the balance of the loan and interest at the reduced rate of eight per cent, and the interest at this rate-on said balance, until about the time of the commencement of this suit, was paid, together with a small payment on account of the principal.
It is contended by appellee that her husband did not understand the settlement which he made.
It is immaterial whether or not he understood the settlement made. It was made pursuant to the constitution in force at the time appellee became a stockholder of the association.
By such settlement, appellee was credited with the full matured value of the stock, which was all she was entitled to under the constitution of the association.
The law charges her as a stockholder with notice of the articles of incorporation and the by-laws.— Columbia Building & Loan Association v. Lyttle, supra.
“One who becomes a member of an association becomes chargeable with knowledge of the provisions of its charter and by-laws and is bound by them. ’ ’— Bertche v. Equitable L. & I. Assn., 147 Mo. 343.
“While by-laws are not always binding upon strangers, a person who becomes a member of an association or company after the adoption of a bylaw, is not considered a stranger, and by joining the organization he is deemed to accord his assent thereto, and to be thereafter bound by the obligations which *293 it may impose upon the members.” — Beach on Private Corporations, § 321.
Another author, after stating the essentials of valid by-laws, says:
“Where these features are found, and the bylaw has been properly passed, every member’s consent is conclusively presumed, and his submission required.” — Endlich on Building Associations, § 271.
It follows, upon the testimony in this case, appellee cannot question the settlement made by her husband above referred to.
The decree will be reversed, and as another trial cannot, under the law as announced in the Lyttle case, supra, result in a decision in appellee’s favor, the lower court is instructed to dismiss the action.

Reversed.