ASKEY ET AL. v. THE FIDELITY SAVINGS ASSOCIATION
ET AL.

Banks and Banking—Building and Loan Associations—Savings
Associations—Insolvency — Stockholders—Preferred Cred-
itors.

A concern incorporated under the name of "The Fidelity
Building and Loan Association," and later changed its name to
"The Fidelity Savings Association." Under the latter name de-
positors claimed they made deposits with the belief that it was a
savings bank, although they received, at the time of making de-
posits, pass books styled "Savings Deposit Account," on the
last page of which appeared a certificate, entitled "Savings Cer-
tificate," stating that the depositor, as a member, had paid into
the treasury the sums represented in the accompanying pass
book in payment, as per balance shown therein, for non-assess-
able deposit shares of a face value equal to the balance as therein
credited, which should, in lieu of a further participation in the
earnings of the association, bear a dividend payable out of the
gross earnings of the association at a rate not exceeding a cer-
tain per cent. per annum; and it further provided for withdrawals
upon thirty days' notice and a less rate per cent. if withdrawn
in less than one year, and that stockholders and patrons could
not withdraw in the aggregate more than one-half the receipts
of the association during any one month without the consent of
the president or the board of directors of the association. The
statute authorized the association to sell its shares of stock in
one or more consecutive series, either fully or partially paid up,
in periodical or other installments, with or without full participa-
tion in its earnings, or partially in limited dividend-bearing stock;
and it allowed stockholders to withdraw. In an action by sev-
eral of the depositors, upon the insolvency of the association,
asking to be made preferred creditors upon the ground that such
association advertised and held itself out as a savings bank;
that its name was misleading and contrary to the law requiring
that the corporate name of the association should indicate the
nature of the business; and that thereby they were led to believe
it was a savings bank, and for this reason paid in their money;
Held, that the association was organized for the mutual benefit
of its members; that the by-laws did not authorize it to receive
deposits except from members; that it could not, if it would,
prefer one member over another, or one class of stock over

another; and, therefore, such depositors became members, and were not within the provisions of Mills' Ann. Stats., § 529, providing that, in case of the insolvency of any bank or association formed under the provisions of such act, the savings depositors should be preferred creditors.—P. 439.

*Appeal from the District Court of the City and County of Denver.*
*Hon. Booth M. Malone, Judge.*

Action by Mrs. J. L. Askey and 116 others against The Fidelity Savings Association by its receiver, R. H. Malone, and others. From a judgment for defendants, plaintiffs appeal.    *Affirmed.*

Mr. Philo B. Tolles and Mr. Thomas D. Cobbey, for appellants.

Messrs. Rogers, Shafroth & Gregg and Mr. W. H. Malone, for appellees.

Messrs. Waldron & Thompson, *amici curiae.*

Mr. Justice Steele delivered the opinion of the court:

The petitioners, appellants here, claiming to be preferred creditors of The Fidelity Savings Association, filed their petition in the district court, praying that they be declared to be preferred creditors under section 529, Mills' Ann. Stats., which provides, that "in case of the insolvency of any bank or association formed under the provisions of this act, the savings depositors thereof shall be entitled to preference in payment over all other creditors of said bank or association."

The action is defended by the receiver of the concern.

The association issued pass-books in which the amount of deposits and withdrawals were entered. The pass-book in which these entries were made is

styled: "Savings Deposit Account."   Upon the last page of all but a few pass-books appears the following certificate:

### "SAVINGS CERTIFICATE.

"The Fidelity Savings Association.

"Denver, Colo...........19...

"This certifies that..........of..............., as a member of The Fidelity Savings Association of Denver, Colo., has paid into its treasury the sums represented in the accompanying pass-book in payment as per balance shown therein for non-assessable deposit shares of a face value equal to the balance as herein credited, which shall, in lieu of a further participation in the earnings of the said association, bear a dividend payable out of the gross earnings of the association at a rate not exceeding..........per cent. per annum, payable or compounded semi-annually June 10th and December 10th each year at the option of the holder hereof.  Provided, that if the money represented hereby is withdrawn in less time than one year, then the dividends paid thereon shall not exceed........per cent. per annum.  This account may be withdrawn at any time by returning this certificate and pass-book upon giving the association thirty days' notice.  Provided, that stockholders and patrons of said association shall not be entitled to withdraw in the aggregate during any month more than one-half of the receipts of the association during that month, without the consent of the president of the association or the board of directors.

"Transferable only on the books of the association upon the surrender of this certificate.

"The holder of this account waives identification and assumes the risk incident thereto. ·

"The Fidelity Savings Association,

"By............................

"Attest:                                President.

............................
                    Secretary."

The concern was incorporated in the year 1889, and it was then known as "The Fidelity Building and Loan Association." Subsequently, and in the year 1896, the name of the association was changed to that of "The Fidelity Savings Association," and about the time of the change a savings department, it is alleged, was added to the association. In the amended articles of association, it is stated, among other things, that "The objects for which our said association is formed and incorporated are for the accumulation and loan of funds for the purpose of assisting shareholders in saving and investing their money on the plan of issuing to them shares of the capital stock of this association, and permitting such shareholders to pay therefor in full at the time of purchase thereof, or by permitting payments therefor in part or in installments at such times and in such manner and on such plan as to the payment, and as to the plan and extent to which said shares shall participate in the profits of the association, as shall be provided in the by-laws of the association and in the certificate for such shares of stock, as issued by our said association; our said association shall have the power to purchase, lease, sell and convey real estate, to receive money on loan or deposit  *  * ᴼ*"

Upon the trial, many advertisements were offered in evidence as tending to show that the association represented that it received money on deposit and that it held itself out to the public as a

savings bank. The witnesses made different state-
ments concerning their dealings with the concern,
but the effect of the testimony was that they de-
posited their money not knowing that the concern
was a building and loan association, and believing
it to be a savings bank. One witness said that when
he deposited his money he was told that it was a
savings bank. It was stipulated that, "if all the
other parties named in the amended complaint were
present and testifying in this case, that their evi-
dence would be the same as that of Mrs. J. L. Askey,
a witness called for the petitioners." This witness
stated, in addition to what is stated above, that she
would not have made deposits if she had thought she
was purchasing building and loan stock.

Certain of the by-laws of the association were
received in evidence. They will be referred to in the
course of the opinion.

To sustain their position that they are creditors
of the association and are "savings depositors,"
and as such are entitled to have their claims pre-
ferred, the appellants contend: that the change of
name of the concern was a fraud upon petitioners,
contrary to law, in that the name did not indicate
the nature of the business transacted; that the so-
called certificate of stock on the last page of the
pass-books is not such in fact. They further contend
that the use of certain words, such as "deposit,"
"depositor," "account," and "cashier," in the rules
of deposit upon the pass-books, clearly indicate that
the association was running a savings bank, and that
the advertisements concealed the building and loan
feature of the association. No by-law was offered
showing that the association was authorized to re-
ceive deposits from non-members, and it was not in-
corporated as a savings bank. In a case where many,
if not all, of the advertisements of the concern were

received in evidence as tending to show that it was a corporation exercising banking powers and privileges, we held that this association dealt only with its members; that the purpose and object of the association was to save money for its members; that persons might, upon becoming members, deposit with the association sums of money at stated intervals, and withdraw it at such times and under such conditions as the by-laws of the. association provided; and we held that it was not a corporation exercising banking privileges or powers.—*Arapahoe County v. Fidelity Savings Association,* 31 Colo. 47.

The advertisements may have misled the public into believing that the concern was a savings bank; but when a person did business with the concern, made a deposit and received his pass-book with the certificate, he must have known, if he could read, that he had become a member of the association and that the interest he was to receive was a dividend payable out of the earnings. When he received his pass-book containing the certificate, if he was dissatisfied with the arrangement, he had the privilege of withdrawing; and that was the time for him to have declared, not now, that he was not a member.

This is not an action based upon fraud and deceit. The necessary allegations of fraud are not contained in the complaint, and the court should have sustained the objection to this character of testimony.

It is said that the change of the name of the association was a fraud upon the appellants, and contrary to law in that the name does not indicate the nature of the business in which the corporation was engaged. The statute declaring what words shall form part of the name of a corporation engaged in such business was not passed until after the name of this association had been changed. Moreover, we

do not regard the name as misleading. If the affairs of this association had been conducted honestly, it would have been, in truth and in fact, a savings association.

The statute authorizes the association to sell its shares of stock in one or more consecutive series, either fully or partially paid up, in periodical or other installments, with or without full participation in the earnings of such association; or partially in limited dividend-bearing stock, as may be provided by the by-laws. The statutes further provide that such stockholder may withdraw at such time and on such notice and terms as provided by the by-laws. The by-laws provide for the issuance of deposit stock with a guaranteed dividend in lieu of all earnings, and authorize the withdrawal of the deposits at any time upon such terms as are provided by the certificate of stock. The by-laws also provide for the issuance of a pass-book to such members as can pay at the home office. The certificate in the pass-book appears to be in accordance with the statute and the by-laws. It certifies that the holder as a member has paid into the treasury of the association the sums shown in the pass-book in payment of non-assessable deposit shares which shall, in lieu of further participation in the earnings, bear a dividend payable out of the gross earnings of the association. It states that the account may be withdrawn at any time by returning the certificate and pass-book, upon giving thirty days' notice, and declares that stockholders and patrons shall not be entitled to withdraw, in the aggregate, in any month, more than half the receipts of the association during the month, without the consent of certain officers. By accepting the certificate, the holder became a member of the association. The act of depositing money was voluntary. There is no allegation that the holders of these pass-books were

induced to accept the certificates through the fraudulent conduct of the officers of the association. In fact, the petition lacks the essential averments to make the action one in fraud and deceit, and it is not claimed that such is the nature of the action. Mrs. Askey testified that she had read and considered the certificate, and under the stipulation of counsel all but one or two of the 117 petitioners read and considered the certificate, but we do not regard that as important. Ordinary prudence required that they should read the certificates, and if they did not do so they should not be heard to complain. In *Jaeger v. Whitsett,* 3 Colo. 105, it is held that one who accepts a deed is bound to exercise ordinary prudence in examining the instrument. "It is not enough that he had confidence in the party with whom he was dealing, but he was bound to exercise the care that men commonly give to such matters."

This association was organized for the mutual benefit of its members. The by-laws did not authorize it to receive deposits except from members. It could not, if it would, prefer one member over any other, or one class of stock over another. We adopt the language of the supreme court of Missouri, quoted with approval by the court of appeals in *Columbia B. & L. Ass'n v. Lyttle,* 16 Colo. App. 428, that: "The plainest principles of justice and honesty clearly forbid that one class of stockholders equally meritorious should be compelled to suffer that another may profit thereby."

The liability of the concern to all its stockholders is nearly $800,000; the liability to the class of which the petitioners are members is something over $200,-000. The startling statement is made, and not disputed, that if the petition is sustained practically all the assets of the concern will be exhausted. Under such circumstances the court should not deprive

other members of their savings unless the petitioners establish fraud and deception by clear and convincing proof, under the rules governing such actions. This was not attempted. The judgment is therefore affirmed.                                        *Affirmed.*

Chief Justice Gabbert and Mr. Justice Campbell concur.