HAMMERSLOUGH, *Appellant*, v. THE KANSAS CITY BUILDING, LOAN & SAVINGS ASSOCIATION.

1 **Usury.** A holder of stock in a building, loan and savings association upon which nothing had been paid, obtained from the association a loan of money equal in amount to his stock, executing in return his note whereby he agreed to pay, monthly, interest on the full amount of the loan, at the rate of ten per cent per annum, and

also an installment of $1 upon each share of his stock. From time to time he made these payments, and also, according to the usages of the association, received from the association partial payments on account of the loan, but not in the aggregate more than five-eighths of the full amount. The association, however, at all times, had the whole of the money ready for him. His payments went into the common fund, in which, by the constitution of the association, every stockholder was entitled to share ratably when the association came to be wound up. *Held*, that he had not paid usurious interest.

2. **Estoppel.** Information known to the party receiving it to be nothing more than an opinion or estimate, if honestly given, will not support an estoppel.

3. **Equity**: TO RESTRAIN ENFORCEMENT OF SECURITY, FOR UNCERTAINTY. Equity will sometimes restrain the enforcement of a security until the amount of the indebtedness it covers is ascertained ; but this rule does not apply where the uncertainty as to amount is a thing inherent in the nature of the transaction and was in the contemplation of the parties at the time the indebtedness was created, as in the case of a note and deed of trust given to secure a loan on the usual plan from a building association.

4. **Damages on Injunction**: ATTORNEYS' FEES. Upon the dissolution of an injunction in this case the defendant was allowed, as damages, $100 for his attorneys' fees. *Held*, not exorbitant.

*Appeal from Jackson Special Law and Equity Court.*—HON. R. E. COWAN, Judge.

AFFIRMED.

*J. D. Cook* for appellant.

*Tichenor & Warner* for respondents.

MARTIN, C.—On the 31st day of August, 1875, the plaintiff filed his application for an injunction, the immediate object of which was to restrain a trustee from foreclosing a deed of trust under which he had advertised certain real estate for sale, which had been mortgaged in said deed to the building, loan and savings association made party to this suit. The plaintiff alleges that there is only due $450, or less, upon the debt which the deed of trust was given to secure, and that he had tendered payment of

6—79

that amount, which had been refused by the parties holding the deed, who claimed a much greater amount. The plaintiff is not a party to the deed of trust, but, after its execution, he became the owner of the property covered by it. He relied on two points at the trial to sustain the injunction. One was that prior to his purchase of the property, and with a view of purchasing, he made inquiry of the holder of the debt and deed of trust as to the amount due upon them, and was answered that it was $450; that upon the faith of this information he purchased and took, from the vendor of the property, security to indemnify him in this amount only, and that the creditor, who is the principal defendant in this case, is estopped from claiming more. The other point was that the creditor has received enough of payments by way of usurious interest to reduce the debt to $450, if such payments were properly credited in reduction of the principal of the debt. The court found from the evidence that the creditor had given no information and made no declaration which would support the estoppel claimed. It also found that after allowing all payments and credits, there was due on the debt secured by the deed of trust $1,212.66; and upon this finding the injunction was dissolved and damages were assessed against plaintiff for bringing the suit.

It is proper to state somewhat more in detail the facts out of which the points in controversy have risen. It seems that in August, 1872, one Francis N. Buckingham became a stockholder in the Kansas City Building, Loan & Savings Association, one of the defendants in this case, to the extent of ten shares, which were rated at the par value of $200 per share; that on the 13th day of August, 1872, he executed his note to the association in the sum of $2,000, for the aggregate amount of his stock, to be paid as it recites "in monthly installments of $10, together with interest at the rate of ten per cent per annum, on the amount of said principal, on or before the 25th of each and every month, until the same is paid in accordance with article

13 of the constitution." The deed of trust in controversy was given to secure this note as also all dues and fines which should become due and payable by him as a stockholder on account of his stock. The property covered by the deed of trust was, on the 6th day of December, 1872, sold to one Hinckley; on the 28th day of November, 1873, it was sold by Hinckley to James A. Alberry, and on the 19th day of January, 1874, it was sold by Alberry to the plaintiff, with covenants of warranty and against incumbrances.

The building association is the growth of modern times. Its leading object is to enable persons of limited 1. USURY.       means and income to build homesteads and pay for them by small installments in keeping with their incomes.  In this case, while Mr. Buckingham became the owner of ten shares of the capital stock of the par value of $200 per share, it seems that he paid little or nothing for them.  Under the rules of the association these ten shares entitled him to borrow funds from the association not exceeding the par value of his stock.  With a view to that end he executed his note which represented the amount of his stock and the extreme limit of the expected loan. He afterward disposed of two shares of stock, and received a credit on the note of $400, which reduced his stock obligation and loan expectations to $1,600.  According to the evidence of the secretary, he secured from the association a loan in the full amount of $1,600.  Whether there was a bonus included in this loan does not very clearly appear. The money representing the loan was ready for him, and he had been receiving it according to the usages of the association as he would require it in the erection of buildings. He had received $1,008.15 in cash, when the business of the association came to a stand-still.  In compliance with his obligations as a debtor and stockholder he paid, while business was going on, ten per cent interest on $1,600, which was the amount of his loan, and $8 per month, which represented the monthly installment of $1 payable on each

share of his stock, according to the by-laws of the association and the terms of his note.

I am unable to perceive any usury in this. Both the interest, which was legal, and the monthly dues, went into the common fund of the association in which he was to have a distributive share according to the amount of his stock, at the winding-up. When the common fund became equivalent to $200 per share of the capital stock, a distribution would take place, in which case the stock debtor would receive his ratable portion in money or the return of his notes for the loans due from him.

It seems that the affairs of the association were not prosperous, and that it became necessary to wind it up before the period contemplated for its termination. Accordingly, at a meeting of the stockholders held on the 4th day of May, 1878, it was resolved that all shares and loans on shares should be cancelled by payment of all dues, interest and fines up to the 31st day of May, 1879. In pursuance of this plan of liquidation the loan secured by the deed of trust in controversy was adjusted by the court. Only the unpaid dues on the stock, and the unpaid interest on the loan were charged against the deed of trust; to which was added the amount of cash actually received on it. No fines were included. The amount due under it was found to be $1,212.66, after allowing all payments made by the stockholder and debtor. The deed of trust being given to secure the obligation of the maker as a stockholder as well as a debtor for borrowed money, the trustee was empowered to foreclose upon default in either relation, and there is no equity to restrain him from doing so, as long as any default remains.

On the question of estoppel, which seems to have been the principal ground relied upon by plaintiff when he applied for the injunction, the decision of the court was correct. When the plaintiff made inquiry from the secretary of the association as to the amount due on the note, it may well be doubted whether that officer was acting

2. ESTOPPEL.

Hammerslough v. Kansas City Building, Loan & Savings Association.

within the scope of his duties in making the answer he is claimed to have made. The party inquiring was neither a creditor nor a stockholder, and had no claims upon it for information or anything else. There is nothing in the evidence of the case to indicate that it was his duty to furnish information about the affairs of the association to mere outsiders. When he did so it was more in the nature of a personal courtesy of the secretary than an act of the association.

But perhaps it is unnecessary to invoke this view of his act to dispose of the question. The plaintiff was advised by the note itself and the deed of trust, and the constitution of the association, referred to in the note, of the peculiar character of the obligation and deed of trust. He is chargeable in law with the information that the deed of trust was given to secure the payment of a series of small sums for an indefinite period of time; and that these sums related to a return of the money borrowed and payment of dues on the stock by virtue of which it was borrowed. He was informed by the 13th article of the constitution referred to in the note itself, that the board of auditors and not the secretary constituted the proper authority to ascertain and declare the value of the shares, and thereby fix the time for division of the assets and cancellation and surrender of notes and stock. In other words, he was sufficiently advised that neither the secretary nor any one else could inform him as a matter of fact how many more payments would have to be made, by way of installments, interest and monthly dues. He was sufficiently advised that any information of such a fact must necessarily be in the nature of an estimate or speculation, dependent upon the future career of the association, which no one could foretell.

There is no pretense that the secretary misinformed the plaintiff as to any fact or figure in his books or under his custody—no pretense that he misstated the receipts or payments which had been made in compliance with the

terms of the note or deed of trust; but the complaint is in reality that he gave an estimate or opinion as to the future outcome of the loan under the constitution and by-laws of the association, as a result of its financial operations, which has proved to be erroneous. This information could have been nothing but an estimate or opinion. The plaintiff had no good reason to accept it in any other light under the facts which charged him with its true character. Declarations or results based on the judgment or opinion of the person making them, will not support an estoppel against him, when they are honestly made and given. While the evidence as to what was actually said by the secretary is somewhat contradictory; there is no evidence tending to affect the character which we attribute to the information sought and claimed by plaintiff to have been given. Therefore, the finding against the plaintiff on the issue of estoppel will not be disturbed.

The position that the injunction should not have been dissolved, but should have been sustained on account of the condition of the indebtedness, which it is claimed would justify the interposition of a court of equity for the purpose of ascertaining and adjusting the same prior to foreclosure and sale, is untenable. It is true that equity will sometimes restrain the enforcement of a security until the indebtedness it covers has been ascertained and adjudged. This has been done when the indebtedness depends upon very complicated accounts extending through a long period of time, and the necessity for an accounting is apparent or is admitted by the other side filing a bill for it. *Capehart v. Biggs*, 77 N. C. 261; *Purnell v. Vaughan*, 77 N. C. 268; *Craft v. Bullard*, S. & M. Ch. 366; *Plowman v. Satterwhite*, 3 Tenn. Ch. 1. No such case is contained either in the plaintiff's bill or in the facts proven. The items containing the disputed indebtedness are neither complicated nor numerous. There is no doubt about the amount paid by the stockholder to the association, nor about the amount due

3. EQUITY: to sustain enforcement of security for uncertainty.

from him monthly, according to the terms and conditions of the note and deed of trust. If the debt is to be adjusted without the aid of the order of dissolution, it might be difficult to state its exact amount. But such doubt or difficulty would present no ground to enjoin the foreclosure of such a deed of trust. The uncertainty of the amount eventually to be borne by each stockholder at any time before the dissolution contemplated in the constitution, is an element inhering in the very nature of the debt and deed of trust, being imposed upon them by the constitution and the healthy operation of the association. Equity would not interfere on account of an uncertainty created and intended in the contract by the deliberate action of the parties to it. If it interfered in such a case it could be called upon by every member of the association who has given security for the payment of dues and loans and interest. Such a course of action would arrest the business and rule it out of existence.

The court assessed $100 among the damages on the injunction bond as attorneys' fees in favor of defendants. 4. DAMAGES ON IN- We see nothing exorbitant in this amount. JUNCTION: attor- neys' fees. It is true that these services were assessed as covering the whole case, and not in form as confined to a motion to dissolve. But a trial of the motion to dissolve must have brought up all the material issues of the case, and rendered it necessary to dispose of the whole case on the motion. There is no error in this. Upon the whole, we think the judgment should be affirmed, and it is so ordered. PHILIPS, C., concurs; WINSLOW, C., not sitting.