(Decided Jannary 5th, 1898).

---

## THE BALTIMORE BUILDING AND LOAN ASSOCIATION *vs.* POWHATAN IMPROVEMENT COMPANY ET AL.

*Building and Loan Associations—Rights of Withdrawing Members —Constitution and By-Laws.*

The by-laws of a building association contained the following provisions with regard to the rights of withdrawing members : "Shares upon which six monthly payments shall have been made, may be withdrawn by giving thirty days' notice, and the holder thereof will be entitled to receive the amount paid on such shares, less the admission fee, together with interest thereon, at the rate of six per cent. per annum for average time." "The payments on each share shall be sixty cents per month for each and every month until maturity, or withdrawal of stock, commencing the month following that in which the certificate is dated. Fifty cents per month per share shall be paid into the loan fund, and ten cents per month shall be devoted to operating expenses." "The receipts of this association shall be divided into two classes, which shall be known respectively as the Loan Fund and Expense Fund. The expense fund shall consist of all admission, transfer fees, together with ten cents per share per month from the monthly payments on stock, five dollars per share on paid-up stock during the first year and two dollars per share each thereafter, and this fund so constituted shall be devoted to the pay-

ment of operating expenses." *Held*, that upon the true construc-
tion of the by-laws and in accordance with the custom of the asso-
tion, withdrawing members are entitled to receive the full amount
of sixty cents paid on each share per month, with interest, and that
the association is not entitled to retain ten cents per share per month
for operating expenses.*

Appeal from a *pro forma* decree of the Circuit Court No.
2, of Baltimore City, by which the appellant was enjoined
from paying in the future to the withdrawing members of
the association the ten cents per share per month which it
is provided in the by-laws shall be devoted to the operating
expenses of the association, and that the surplus, if any, of
the expense fund of said association shall be treated as
profits, and as such shall remain in the association for the
benefit of the members thereof who shall continue therein
until the maturity of the stock.

The cause was argued before McSHERRY, C. J., BRYAN,
FOWLER, BRISCOE, PAGE, ROBERTS and BOYD, JJ. (Novem-
ber 30, 1897).

*James A. Pearce* and *John S. Wirt*, for the appellant.
One of the most important rights conferred upon a stock-
holder in a Building Association is the right to withdraw.
It is the right which distinguishes the stockholder of a
Building Association from a stockholder in an ordinary pri-
vate corporation.    The right of a member to withdraw is as
clearly established as his right to borrow money on his
shares, or his right to hold his shares until the same mature.
Not only is it a right incident to membership of such an
association, but it is also a right favored and protected by
the Courts.
The right to withdraw, in the absence of any statutory or
charter provision, is properly provided for by the by-laws.
The appellant had the right to enact by-laws not contrary

---

* Authorities relating to withdrawals from building and loan associ-
ations are collected in a note to *Engelhardt* v. *Fifth Ward Ass'n.* 35
L. R. A. 289.

to its charter or the law, and did pass by-laws regulating this subject which are binding on all the members. We contend that section 2 of Article 6 constitutes a clear contract between the association and its members, and that any of the members who hold shares upon which six monthly payments shall have been made, and who shall give the thirty days notice, shall be entitled to receive the amount paid on such shares, less the admission fee, with interest thereon at six per cent. This is the plain obvious meaning of this by-law which was in force when all of the appellees subscribed to their stock and borrowed money on the same. It is no answer to say that the provision is too liberal to withdrawing members, or unfair to the borrowing or persistent members, because the members of this association were at liberty to make upon this subject any contract *inter se* which they pleased that was not in violation of law or contrary to public policy. It will be observed that the language of this by-law is the "*amount paid on such shares*," not the amount that may be credited to such shares on the books of the association, but the "*amount paid.*" If we look at section 3 of Article 8 of the by-laws, we will find the amount paid on each share of stock, which the withdrawing member is entitled to receive, on complying with the provisions of the by-law regulating withdrawals. The amount paid on the shares is sixty cents per month, and the subsequent portion of this by-law merely apportions the payment of sixty cents between the loan fund and the expense fund. The fact that section 2 of Article 6 retains the admission fee from withdrawing members, shows clearly the intention to refund the whole payment of sixty cents per month. It will be seen by reference to section 2 of Article 10 of the by-laws, that the admission fees are as much a part of the expense fund as the monthly payment of ten cents. If the "amount paid on such shares" is to be construed to mean only fifty cents credited to the "Loan Fund," then the exception of the admission fee in Article 6 is entirely unnecessary, because under the contention or

the appellees no part of the " Expense Fund " is included in the amount paid on such shares.

If on consideration of all the by-laws in question this Court is of the opinion that the contract is not so explicit in favor of the withdrawing members as we contend, but that there is some doubt or confusion, then the authorities are clear that the Court should adopt that construction most favorable to the withdrawing members as against the association. *Endlich on Building Associations*, sec. 106. The legal status of the withdrawing member of a Building Association has been defined in many cases, and by-laws similar to the one in this case have been upheld by the Courts.

The English rule is that if the corporation is solvent and a member gives notice of withdrawal and the notice had matured before the association is wound up, he is entitled to be paid out of the assets after outside creditors are paid, in priority to those members who had not given notice. *Auld* v. *Glasgow Society*, 12 App. Cas. 197 ; *Walthen* v. *L. R.*, 10 App. Cas. 33 ; *Thompson on Building Associations*, 69. The weight of American authority seems to be that in the final settlement the withdrawing members are at least on an equality with the other members. *Endlich on Building Associations*, 108 ; *Christian's Appeal*, 102 St. 184 ; *Booz's Appeal*, 109 Pa. St. 592. And this Court has decided that a person can be both a stockholder and a creditor of the corporation and that a member who has withdrawn is a quasi-creditor. *Henninghausen* v. *Tischer*, 50 Md. 583 ; *Steinberger* v. *Savings Asso.*, 84 Md. 634. There is no provision anywhere in the statute law, in the certificate of incorporation or in the by-laws requiring the withdrawing members to contribute to the expenses except what is provided in section 2 of Article 6. " The relation of a member to the association is essentially that of a partnership for a definite period of time, entitled upon its expiration to the profits upon his investment in the enterprise. And hence his failure to continue in the concern would be in the nature of a breach of contract, to be followed by the loss of his

contributions.   To avoid this result a provision, as politic for the association as just and reasonable to the members, is usually made an integral part of the scheme, that a with-drawing member shall receive the amount paid in by him, less all fines and charges, with such share of the profits as may be just." *Endlich on Building Associations*, 127. And this definition has been approved by this Court in case of *Steinberger* v. *Savings Association, supra.* See also *Fuller* v. *Salem, etc., Associations*, 10 Gray, 94.

*John Prentiss Poe* for the appellee.

ROBERTS, J., delivered the opinion of the Court.

The appeal in this case is taken from a decree of the Cir-cuit Court No. 2, of Baltimore City, perpetually enjoining the appellants, its officers and agents, from paying, in the future, to the withdrawing members of the appellant asso-ciation the ten cents per share per month, which it is con-tended is provided in the by-laws of the appellant shall be devoted to the operating expenses of the appellant, and that the surplus, if any, of the expense fund of said appellant, shall be treated as profits, and as such shall remain in the appellant for the benefit of the members thereof, who shall continue therein until the maturity of their stock.   The question presented by this appeal is, whether the decree, from which the appeal is taken, correctly interprets the by-laws of the appellant relating to the rights of those who are denominated the withdrawing members.   The appellant was incorporated on the 26th of March, 1891, under the provisions of the General Incorporation Law of this State. By an amendment of its charter, dated the 31st of January, 1893, its aggregate capital stock is declared to be "repre-sented by such number of shares of stock, not exceeding 250,000 shares, as the members of the appellant may from time to time subscribe for, and that the par value of said shares of stock shall be $100 per share." The appellant is engaged in a very extensive business enterprise, involving

large sums of money.    It is claimed that it has sixty
thousand shares in force and holds about three thousand
mortgages, given to it as security for advances made on
shares of the value of two millions of dollars.    The ques-
tion arising on this appeal is one of importance, the dispo-
sition of which may seriously affect a large number of
shareholders.    The appellant from the beginning of its
operation down to the filing of this bill in the Court below,
a period of more than six years, has been in the habit of
paying to its withdrawing members under the advice of its
counsel the whole sixty cents per month paid in by them,
and this it is contended by the appellant is the construction
proper to be placed on the by-laws as to their just meaning
and fair legal intendment, and this the appellant claims
constitutes in good faith the contract existing between the
appellant and its members.    The converse of this proposi-
tion is the contention of the appellees, as stated in the de-
cree of the Court, from which this appeal is taken.

Before proceeding to announce our views as to the mean-
ing and effect of the by-laws of the appellant, which have
been adopted for its management and government, it is im-
portant that we should ascertain the principles which lie at
the foundation of an enterprise of this character; not so
much its declared purposes as its actual meaning demon-
strated in the conduct of its affairs.  From a careful examina-
tion of its charter and by-laws found in the record, it is
quite apparent that it is an association incorporated under
the provisions of the Code, Art. 23, sections 95–104, in-
clusive, title, " Corporations," sub-title, " Building or
Homestead Associations," and is thereby entitled to exer-
cise all the powers and attributes which property pertain to
or flow from the various provisions of the Code referred to.
Its primary object is the investment of money for profit and
gain, whilst its secondary effort should be its division and
distribution in such manner as to secure to each shareholder
his just and fair proportion of its profits.    As a mutual
association based on the mutual plan it is bound to treat its.

members equally, and any by-law or contract made by it in contravention of such mutuality would be *ultra vires* and void. Whilst we are of opinion than an examination of all the by-laws must be made to ascertain their meaning and effect, we must not allow too much weight to attach to any one alone, so that it shall unduly preponderate as against the other. The appellees in their brief assert that, " The whole contention of the withdrawing members is based upon these words in section 2 of Art. VI : ' And the holder thereof will be entitled to receive the amount paid on such shares, less the admission fee, together with interest thereon, at the rate of six per cent. *per annum*,' and while they admit that these words must be interpreted in connection with other provisions of the by-laws, they maintain that there are no other provisions which qualify or restrain what they insist is their natural and primary meaning."

As illustrative of the effect of the appellees' contention, we submit the following calculation based upon the theory advanced by the learned counsel who presented the appellees' case to this Court in a most ingenious and forcible argument. Take for consideration ten shares of stock in the appellant association, which had been withdrawn at the end of the first year, as follows :

Admission fee, $1.00 per share................ $10.00
Amount paid on ten shares for 12 months........ 72.00

Total amount paid in........................$82.00

In withdrawing the admission fee is retained......$10.00
Appellees claim that on a proper construction of by-
    laws ten cents per share per month on monthly
    payments on stock should be retained..........$12.00

                      $22.00

Amount of principal due withdrawing member.....$60.00
Interest at six per cent. for average time.......... 1.80

Total receipt..........................................$61.80
Without taking into consideration interest not allowed
    on amount paid in, the loss is...............    ...    20.20
                                                    ─────────
                                                       $82.00

Hence it follows, as shown by this statement, that the withdrawing member loses on each ten shares of his stock the sum of $22.00.

It may be as well for us at this point to revert to the fact, heretofore mentioned, that from its inception, and so far as the record discloses, down to the present period, the appellant has not in a single instance retained " ten cents per share per month from the monthly payments on stock," but has always paid the holder of stock, that which by the express terms of Art. VI, sec. 2 of the by-laws, " the amount paid on such shares, less the admission fee, together with interest thereon at the rate of six per cent. per annum," and *this* the by-law says in terms " *he will be entitled to receive.*"    But it is contended by the appellees that as against this construction stands section 3 of Art. VIII, which reads : " The payments on each share shall be sixty cents per month for each and every month until maturity, or withdrawal of stock, commencing the month following that in which the certificate is dated.    Fifty cents per month per share shall be paid into the loan fund, and ten cents per month shall be devoted to operating expenses," and sec-. tions 1, 2 and 3 of Art. X, which read, " the receipts of this association shall be divided into two classes, which shall be known respectively as the Loan Fund and Expense Fund. The expense fund shall consist of all admission, transfer fees, together with ten cents per share per month from the monthly payments on stock, five dollars per share on paid-up stock during the first year, and $2 per share each thereafter, and this fund so constituted shall be devoted to the payment of operating expenses.    The loan fund shall consist of all receipts which do not go to the expense fund, as hereinbefore provided."    In contrasting these several sections

of the by-laws with sec. 2 of Art. VI, which reads as fol-
lows : " Shares upon which six monthly payments shall
have been made may be withdrawn by giving thirty days
notice, and the holder thereof will be entitled to receive the
amount paid on such shares, less the admission fee, together
with interest thereon, at the rate of six per cent. per annum
for average time," there is to be found manifest inconsist-
ency.    In determining the rule of construction proper to be
applied here is a question by no means free of difficulty, yet
when you compare the language of sec. 2, Article VI, which
is clear and explicit, without qualification or condition, with
the phraseology of section 3 of Article VIII, and of sections
1, 2 and 3 of Article X, the first named expressly declares
what the withdrawing member is entitled to receive; the
other sections provide only for the various funds and the
uses to which they are to be applied.    It is an admitted
fact that it has been the usage of the appellant in paying to
a withdrawing member the amount " which he was entitled
to receive," to pay him the whole sixty cents per month
paid in by him.    The by-laws were framed by those who
were the promoters and original members of the appellant,
among whom it is alleged were the appellees, and now after
the expiration of six years, the by-laws having received but
one construction and undergone no change in their phrase-
ology, it is proposed to give to them an entirely different
meaning.    We apprehend that there can be but small doubt
as to the object which is now sought to be attained.    The
" Agreed statement of facts " says, " The amount of the ten
cents expense fund repaid to the withdrawing members since
the organization of the company is $98,482.31.    Had this
amount been retained it would be an asset of the association
and would have been devoted to the maturing stock."    It
appears to be a conceded fact that the appellant is a solvent,
prosperous and money-making concern, which, notwithstand-
ing it has paid out to withdrawing members since its incor-
ation nearly one hundred thousand dollars, without impair-
ing the success of the enterprise, we are forced to the

conclusion that its organizers were well informed as to the proper methods to be adopted and followed to protect it from financial disaster and secure for it successful operation. It is a canon of construction often applied in the ascertainment of the meaning of statutes which is equally applicable here, " that the design and intent of the framer, when it can be ascertained, must prevail." When you contrast the two theories, that of the appellant with that of the appellees, you cannot fail to recognize the fact that this controversy finds apt illustration in the statement which we have made and is found *ante* p. 65 of this opinion, and demonstrates clearly the more equal and fairer distribution of the funds which have been accumulating for the benefit of all its members. If the appellant can be managed in the future as it has been during the past six years under the construction of its by-laws as contended for by the appellant, there can be no reasonable expectation that the non-withdrawing members will be called upon to assume more than their just share of responsibility.

For the reasons assigned, we think there was error in the passage of the *pro forma* decree appealed from, and it is hereby reversed, and the bill of complaint dismissed.

*Decree reversed and bill dismissed.*

(Decided January 5th, 1898).