[S. F. No. 5132. In Bank.—December 8, 1909.]

SIMON W. HENRY and ANNIE HENRY, his Wife, Respondents, v. THE CONTINENTAL BUILDING AND LOAN ASSOCIATION (a Corporation), Appellant.

BUILDING AND LOAN ASSOCIATION—NOTE AND MORTGAGE BY STOCKHOLDER UNPAID—SHARES NOT MATERIAL—CANCELLATION FOR FRAUD —UNSUPPORTED FINDING.—In an action to cancel a note and mortgage executed by a stockholder in a building and loan association, secured by his pledged shares, which is unpaid according to its express terms, for alleged fraud in its procurement by misrepresentation that it would be fully paid, canceled, and delivered up in seven years, which period had elapsed, it is held that a finding of such fraud, and a decree of cancellation based thereon, is unsustained by evidence of prospectuses, stating that the mortgage would be paid up in about seven years, on the assumption that the mortgagor complied with all the terms of his contract.

ID.—STATEMENTS BY LOCAL AGENT UNAUTHORIZED.—Where circulars issued to local agents explicitly declared that they were without authority to make and conclude terms with prospective investors and borrowers upon the amount to be loaned or the time during which such loan should run, no mere statements made by such local agent to the plaintiff could support the findings and judgment based upon fraud.

ID.—STATEMENTS IN PROSPECTUSES—MATTERS OF SPECULATION AND OPINION.—The statements made in the prospectuses issued by the building and loan association, based upon prospective earnings, which could in the nature of the case be nothing more than an approximation that the obligation would mature in *about* seven years, must be construed to amount to nothing more than matter of speculation or opinion of the officers, and tables contained therein amounted to nothing more than an estimation or opinion as to the period of time of continuance of the obligation, and a finding of fraud cannot be based thereon.

ID.—MERE MATTER OF OPINION NOT BINDING.—No mere matter of opinion could bind the association. An assertion of that which is not true in order to constitute a false representation, cannot be held to include a mere opinion, however erroneous it may be as such, or however positively stated.

ID.—EXCEPTION TO RULE—OPINION INVOLVING FALSE STATEMENT OF FACT.—It is not a universal rule that an opinion cannot be fraudulent, for it may involve a false statement of fact, which would render it fraudulent, and the party making it in such case cannot escape responsibility on the ground that he was merely expressing an opinion.

ID.—STATEMENT BASED UPON EXPERIENCE.—If the building and loan association had made it as a statement based upon its own experience that payments made upon its stock would mature and pay its loans once in seven years, that, if untrue, would be a fraudulent statement of facts; but where the records show no such statement, but merely speak of a general experience of fifty years commending the system adopted by this association, such statement is not fraudulent when the record shows that it has not existed so long.

ID.—TERMS OF PROSPECTUS NOT EMBODIED IN NOTE AND MORTGAGE.—Where no part of the prospectus is embodied in the note and mortgage, beyond the mere fact that the note and mortgage are to mature in seven years, provided there is no prior default in payments authorizing a foreclosure, the borrowing member cannot avail himself of any agreement as to the number of payments which will mature his stock and pay the debt, when no such agreement is embodied in the note and mortgage.

ID.—STATEMENTS CONTRADICTING CONTRACT CANNOT ESTOP.—Oral or printed statements made by officers or agents of a building and loan association in contravention of the plain language of the contract, whether relied upon by the person to whom made or not, cannot be made the basis of an estoppel.

ID.—IMPROPER CREDITS OF PAYMENTS—VIOLATION OF STATE LAW.—The law of this state regulates building and loan associations, and payments to be made upon loans made by it to its stockholders. The trial court erred in violation of the law, in computing and crediting upon the note and mortgage the monthly payments made upon the premium and the monthly installments upon the stock. The law

authorized the very systems to which the respondents had bound themselves by their contract, and the court could not lawfully depart therefrom.

ID.—DUAL RELATION OF BORROWER AND STOCKHOLDER.—One who makes a loan from a building and loan association, under the law, occupies the dual relation of a borrower and a stockholder, each of which is distinct from the other, and payments made upon the stock cannot be credited upon the loan. A shareholder who is a mortgagor cannot default in his payments upon the loan, and upon his shares which are not paid up, and then claim the full benefit of all of his payments to extinguish the loan.

ID.—CANCELLATION NOT ALLOWABLE WHEN DEBT REMAINS UNPAID.—A debt which remains unpaid upon a note and mortgage will not permit of the remedy in equity for cancellation thereof.

ID.—MORTGAGOR ENTITLED TO FORECLOSE.—The debtor having defaulted in payment of the note and mortgage, the mortgagor is entitled to foreclose the same for the balance due and unpaid.

APPEAL from an order of the Superior Court of Fresno County denying a new trial. H. Z. Austin, Judge.

The facts are stated in the opinion of the court.

Gavin McNab, and Everts & Ewing, for Appellant.

N. C. Coldwell, for Respondents.

THE COURT.—The appeal in this case was taken to the district court of appeal in and for the third appellate district. There the order appealed from was reversed. The opinion, prepared by Hart, J., reads in part as follows:—

"The appellant, as its name implies, is a building and loan association, organized as a corporation under the laws of this state.

"The respondents became members of the association by buying a certain number of shares of stock therein, and thereafter borrowed two certain sums of money, to wit: Eight hundred dollars and three hundred dollars, respectively, giving to appellant their two several promissory notes evidencing the two amounts so borrowed, and as security for the payment of said notes executed a mortgage on certain real estate situated in the city of Fresno, and, further, pledged as collateral the shares of stock referred to. The first of these notes in point of the time of their execution is for the larger amount

and bears date of February 1, 1898, and the other February 15, 1898. Both, as before stated, are secured by a mortgage on certain real estate of the respondents, and, as additional security, eight shares of the stock of the association are pledged on the larger note and three on the smaller.

"The respondents brought this action to compel the defendant to deliver up for cancellation said promissory notes, to compel satisfaction of record of the mortgages given to secure the same and for damages.

"The complaint contains two counts and sets out in detail the history of the transactions, alleging, among other things, that the respondents were induced to execute the notes and mortgages through the misrepresentation and fraud of the appellant, and that the respondents have paid in full the principal sums and interest accruing thereon of said notes.

"The defendant, by answer, specifically denies all the vital averments of the complaint and by way of cross-complaint seeks affirmative relief in the nature of a decree foreclosing said mortgages and for a sale thereunder of the property, to satisfy a total balance alleged to be due it from plaintiffs in the sum of $548.42.

"The plaintiffs, answering the cross-complaint, repeat the allegations of their complaint, alleging fraud, etc., thus meeting by avoidance the claim of the defendant to the right to a foreclosure of the mortgages and a sale of the mortgaged and pledged property.

"Upon the issues tendered by the cross-complaint and answer thereto the cause was tried, resulting in a judgment for the plaintiffs as prayed for in their complaint.

"This appeal is from the order denying the defendant a new trial.

"It is agreed between counsel for the respective parties that the law and the facts involved in both causes of action stated in the cross-complaint are practically the same, and that, consequently, whatever may be the conclusion reached in the one cause will necessarily be the conclusion arrived at in the other. We shall, therefore, confine the discussion principally to one of the causes of action only.

"The vital question presented is, Does the evidence support the finding that the plaintiffs (defendants in cross-complaint) were induced to execute the note and mortgage through such

misrepresentation and fraud upon the part of the corporation as to entitle them to the relief asked for by them?

"The finding of the court upon the question of fraud is as follows: "That when the plaintiffs executed and delivered the promissory note and mortgage aforesaid, the defendant, through its authorized agents and officers falsely and deceitfully represented to plaintiff that at the expiration of seven years from that date, upon the payment, during said period, of about $1,142.40, that the total indebtedness of plaintiffs to defendant, on said note and mortgage, would be paid and liquidated in full, and that it would then redeliver said note to him, and also fully discharge and satisfy said mortgage. And said defendant also, then and there, through its authorized agents and officers, falsely and deceitfully represented to plaintiff, that the payment of the amounts specified in said promissory note and mortgage, together with the dividends and accumulations which said eight shares of the capital stock of the defendant corporation, then pledged with the defendant by the plaintiffs, would earn in said seven years, would, at the expiration of said seven years, fully pay and liquidate all indebtedness, under said note and mortgage, whereas, in truth and in fact, its agents and officers then and there knew that said shares of capital stock could not, and would not, within said seven years earn dividends and accumulations sufficient, together with the said monthly payments, to fully pay and liquidate said indebtedness, and said agents and officers of the defendant corporation thus falsely and deceitfully induced plaintiffs to execute and deliver to it said note and mortgage. That the plaintiffs relied upon said false and deceitful representations in making said note and mortgage; and had no means of then knowing that the same were false and deceitful.'

"The evidence which it is contended supports the foregoing finding may be briefly stated as follows: One F. J. Haber, in February, 1898, was the local agent of the appellant in the city of Fresno. The negotiations for the loan were conducted through him. Prior to the execution of the first note and mortgage, the plaintiff, Simon Henry, had a conversation with Haber relative to the desired loan and the conditions upon which the same could be secured from appellant. Haber gave Henry some printed literature (called prospectuses) outlining

in detail the plan upon which the appellant conducted its business. These prospectuses, among other statements, contained the following: 'If you are able by working one hour. . more per day, or by setting at work some grown-up child, or by practicing some self-denial, or by living a little more economically, to put aside a small amount per month, we want to have a little personal talk with you about the ways and means of home-getting. The small amounts set aside month after month for *about seven years* will give you, at the end of that time, a home of your own, or a sufficient sum which could not otherwise be obtained to start you in a business of your own, and thus lay the foundation of your fortune and independence.'

"In addition to the foregoing, the prospectuses contained tables illustrating the result of investments made with the corporation, showing in each instance, that upon the basis of a loan of one thousand dollars, the monthly payment for eighty-four months (seven years) of interest and premium on the loan together with a certain installment on the value of the shares of stock required to be purchased by the borrower as a prerequisite to securing such loan the borrower would square himself with appellant and thus become the owner of his house free from all encumbrances so far as appellant was concerned.

"After reading these circulars and securing such information from Haber as he was able to give them, the plaintiffs first purchased eight shares of stock in the corporation, valued at one hundred dollars per share, and then borrowed the sum of eight hundred dollars, executing their joint promissory note therefor, mortgaging their home in the city of Fresno and pledging their shares of stock in the corporation to secure the payment of the same.

"The note reads as follows: 'San Francisco, Cal., Feb. 1, 1898. Seven years after date, for value received, we promise to pay to the Continental Building and Loan Association (a corporation duly organized under the laws of the state of California) or its order, at its office in the city and county of San Francisco, state of California, the sum of eight hundred dollars in gold coin of the United States of America, with interest thereon, in like gold coin from date hereof until paid, at the rate of six (6) per cent per annum, interest payable

monthly in advance on the 1st day of each and every month; and if said interest is not paid as it becomes due it shall become part of the principal, and thereafter, until paid, bear interest at the rate of two (2) per cent per month, and in case said monthly interest or any part thereof, is not paid within one (1) month after it becomes due and payable, or in case the monthly installments due upon eight shares of the capital stock of said corporation, pledged as security for the payment of this note, or any part thereof, are not paid when the same becomes due and payable, or in case the monthly premium due on said loan amounting to the sum of $4.80 per month for each and every month during said term of seven (7) years payable monthly in advance on the 1st day of each month, is not paid when due, then the whole of said principal sum of eight hundred dollars, and the interest thereon, shall become forthwith due and payable at the option of the holder hereof, and notice of the exercise of such option is hereby waived.   This note is secured by a mortgage bearing even date herewith and the pledge by said mortgagors of eight shares of the capital stock of said mortgagee, being certificate No. 13431.'

"The note, it will be noticed, very clearly states the conditions of the transaction. The mortgage likewise contains all the conditions upon which the loan was made.

"The evidence further shows and the court found that the plaintiffs had paid to the corporation up to the time of the institution of this suit on the eight hundred dollar transaction, for all purposes, the total sum of $1136.80. It also appears that the dividends earned by the stock amounted approximately to one hundred and five dollars. The first mentioned sum includes all the payments made by the plaintiffs on the transaction—that is, all payments on account of the stock, of the premium and of the interest.

"I am of the opinion that the finding upon the question of fraud is not justified by the evidence.

"In the first place, it is to be said that the printed circulars, issued and published by the appellant, and from which the respondents claim to have gathered the impression that the stock would mature and all their obligations under their contracts cease by the end of seven years, explicitly declared that local agents were without authority to make and conclude

CLVI Cal.—43

terms with prospective investors and borrowers upon the amount to be loaned or the time during which such loan should run. Therefore, if, as appellant contends, there be a finding that the local agent of the defendant made false representations to the plaintiffs by which they were induced to sign the note and mortgage, the same may be disregarded as immaterial and, therefore, altogether insufficient of itself to support the judgment. In the second place, I think the statements and tables contained in the prospectuses indicating that the stock would mature and the debt of the plaintiff thereupon become extinguished at the end of seven years must be construed to amount to nothing more than speculation or as involving a mere expression of opinion of the officers of the appellant upon the proposition. As the maturity of the stock must, obviously, depend to some extent upon its earnings, I cannot see how anything more than an approximation as to time could be made, and this proposition must be plainly apparent to one who gives the plan upon which building and loan associations conduct their business operations thoughtful consideration. The statement in the circular was to the effect that, assuming that the investor and borrower faithfully performed the terms of his contract, the stock would mature and all obligations under the contract cease in *about* seven years. The tables were manifestly intended as illustrations or exemplifications of the methods and results of the business operations of appellant, and at most involved only an opinion as to the period of time during which it was necessary that the relations between the parties should exist before the extinguishment of the obligations of the contract. In this view, it is plain that a finding of fraud could not be predicated of evidence showing such statements. (*Johnson* v. *Johnson,* 134 Cal. 662, [66 Pac. 847].) There is nothing in either the note or the mortgage (except that which may be inferred from the fact that the note is made to run for seven years— undoubtedly based upon an approximation) specifically providing that a certain, definite number of payments would result in the maturity of the stock. And 'a borrowing member cannot avail himself of an agreement as to the number of payments which will mature stock, when that agreement is not embodied in his bond and mortgage.' (*Noah* v. *American etc. Assoc.,* 31 Ind. App. 504, [68 N. E. 615].) Nor is the

association bound by a mere expression of opinion. (*Hammerslough* v. *Kansas City Bldg. etc. Assoc.,* 79 Mo. 80; *Gary* v. *Verity,* 101 Mo. App. 586, [74 S. W. 161]; 6 Ency. of Law, p. 122; *Baltimore Bldg. etc. Assoc.* v. *Powhattan Imp. Co.,* 87 Md. 59, [39 Atl. 274].)

"In *Johnson* v. *Johnson,* 134 Cal. 662, [66 Pac. 847], it is said: 'An assertion of that which is not true in order to constitute a fraudulent representation cannot be held to include the opinion of the person, however erroneous it may be or however positively stated.' (See, also, *Lee* v. *McClelland,* 120 Cal. 147, [52 Pac. 300]; *Lloyd* v. *Kehl,* 132 Cal. 107, [64 Pac. 125]; *Colton* v. *Stanford,* 82 Cal. 398, [16 Am. St. Rep. 137, 23 Pac. 16]; *Oppenheimer* v. *Clunie,* 142 Cal. 317, [75 Pac. 899].)

"But, conceding that the language of the circulars involved an unqualified declaration of a fact and was reasonably susceptible of the interpretation which the respondents undertake to give it, and that they could well have conceived an understanding of its import which they claim to have received from it, the fact remains that the note and the mortgage, constituting the contract to whose terms they bound themselves, contain in detail in clear and unambiguous language the terms, conditions and obligations which they assumed. The plaintiff, Simon Henry, testified that he read the mortgage before signing it, and presumably he understood its terms and conditions and well knew the full scope of the contract to which he made himself a party. It is, I think, well settled that oral or printed statements made by officers or agents of a building and loan association in contradiction of the plain language of the contract, whether relied upon by the person to whom made or not, cannot be made the basis of an estoppel. (*Noah* v. *American etc. Assoc.,* 31 Ind. App. 504, [68 N. W. 615]; *McNamara* v. *Oakland etc. Assoc.,* 131 Cal. 337, [63 Pac. 670].)

"There is, as suggested, no obscurity in the language of either the note or mortgage. The latter, among other things, plainly provides that sixty cents per share shall be paid each month and 'until the said shares are fully paid by the said payments and the dividends and accumulations on said shares.' I am unable to comprehend how a person, capable of transacting business for himself, could well misapprehend this language. In fact, the language of both the note and mort-

gage prescribing the conditions and explaining the methods by which the business between the parties was to be conducted is so clear that even the plaintiffs must have understood that nothing more than an approximation could be made as to the length of time which would probably be required for the stock to mature and the debt to be liquidated.

"Under the law, no one can borrow money from a building and loan association without first becoming a stockholder therein. The investor and borrower, under the methods authorized by the law for carrying on the business of such concerns, must pay a certain installment each month on the value of the stock, a monthly premium for the privilege of securing the loan, and interest on the principal borrowed, payable in monthly installments, and all these payments must be made until the stock is fully paid for. The total sum found by the court to have been paid by the plaintiffs on the eight hundred dollar transaction consisted not only of the interest on the note, but also the monthly payments on the premium and the monthly installments on the stock. In other words, the court below allowed as credits upon the note payments which the agreement into which plaintiffs entered expressly provided should be exclusively applied to the payment of the premium and to the extinguishment of the obligation arising by reason of the purchase of the eight shares of stock required to be bought as a prerequisite to the exercise by plaintiffs of the privilege of securing the eight hundred dollar loan. Under the law of this state the court erred in thus computing and crediting the payments made by respondents. (*McNamara* v. *Oakland etc. Assoc.*, 131 Cal. 337, [63 Pac. 670]; *Pacific States Savings & L.* v. *Green*, 123 Fed. 47, [59 C. C. A. 167].) In the first mentioned case, somewhat similar in its facts to the case at bar, the supreme court with clearness explains the law applicable to building and loan concerns and their business operations as authorized by the statute, I make the following extended quotation therefrom:

" 'Appellant contends that if payment of the note could be enforced he had the correlative right to offset his payments and his earnings, and that if he is granted this right it will appear from the evidence that the debt is paid. Appellant is mistaken as to the nature of the agreement into which he

entered. He occupied the dual relation to the corporation of borrower and stockholder, each of which was distinct from the other. Under the scheme he could not be borrower without becoming a stockholder but he could be a stockholder without being a borrower. . . . The mortgagor having ceased all payments and by suit having sought to compel the cancellation of his mortgage, the mortgagee is within its rights in asking a foreclosure of the mortgage and a decree for the sale of the shares and, presumably, they will bring their cash value and plaintiff will have his credit therefor. That the relations of borrower and stockholder are separate and distinct, in associations such as defendant's assignor, seems to be well settled. (Endlich on Building and Loan Associations (2d ed.), secs. 123, 477.) And it is general law that payments on account of collaterals *are not payments on account of the debt they secure;* the pledging of shares as collateral security for the payment of a debt is a recognition of the distinct standing of the member as a member and as a debtor. (Endlich on Building and Loan Associations, sec. 477 and cases cited.) . . . He paid interest on the note and installments on the *shares* for several years and must have known for *what* he was paying. . . . This was part of the plan for creating funds, in which the plaintiff shared with other members, into which he entered with his eyes open. He testified that he would not have signed the note had he understood that he was to receive but $960, and it appeared that the money was not in fact paid until after the note and mortgage were delivered. . . . He made so many payments voluntarily after he must have known the full effect of his contract, that his testimony that he would not have signed the note had he known the facts, cannot avail him. . . . It was proved by a witness, conceded by both sides to be an expert accountant and familiar with the workings of defendant and other like corporations, that plaintiff's shares had not matured September 15, 1896, when the action was brought. But the witness said it could not be ascertained certainly in advance when the series would mature for the *obvious reason* that the earnings were an unknown quantity for the future. We cannot see that there is anything in the plan upon which defendant and its assignor were operating that would permit a shareholder who was a mortgagor to default in payments of interest and prin-

cipal of his notes and installments on his shares, and still entitle him to claim the full benefit of all his payments whenever he chose to default. We cannot find, however, either in the statute or in the by-laws or in the contracts entered into any authority for equity to interpose so as to aid the unfortunate borrower in the situation of plaintiff.'

"So, in the case at bar, it is clear, from the evidence, that the stock of the respondents had not matured at the time of the commencement of this suit, and consequently the payments made on said stock could not, under the terms of the contract of the parties, be lumped with payments for other agreed purposes and the total sum thus produced made to extinguish the principal sum of the note.

"I have not taken the pains to make figures for the purpose of ascertaining whether the total amount which the appellant claims is still due it from the respondents on the two transactions is correct or not, but it is apparent, from a cursory examination of the figures presented in the record, that there is still an amount due on the two transactions approximating the total sum claimed by appellant. In any event, there being still something due from the respondents, the latter cannot claim the relief asked for.

"The findings of the court are founded entirely upon the issue of fraud, and it is upon this ground alone, as must be obvious from what has already been said, that the court held and found that there was nothing remaining due the appellant, as may be instanced by the following rather remarkably phrased finding: 'That plaintiffs and defendants in crosscomplaint are not willing to pay defendant and cross-complainant such further sum as is just and equitable to satisfy said note and mortgage and to obtain discharge and satisfaction thereof, but upon the contrary plaintiffs and defendants in cross-complaint allege that said note and mortgage are utterly void and of non-effect, by reason of the fraud, trick and device of the defendants and cross-complainant, as in these findings set out.'

"As I have declared, the evidence does not warrant the finding of fraud and there is absolutely no support for the judgment.

"It is true that the payments which plaintiffs have made to appellant, if on a straight loan at six per cent per annum,

would be sufficient to extinguish their obligation. But the law, as we have seen (Civ. Code, sec. 633 to sec. 648, inclusive), authorizes the very system to which plaintiffs bound themselves by their agreement, in their relations with the appellant.

"Under that system, it is to be observed, while the borrower (who must have shares of stock equal in value to the extent of his loan) in effect reduces the principal each month through the payment of the required monthly installments on his stock, he, nevertheless, continues to pay interest on the full principal of the note until his stock (practically principal) has been paid for. But the money so paid in by the stockholder is invested or loaned out by the concern and thus the dividends to which the investor is entitled on his stock are acquired.

"I suppose that it may be said that paying for a home by the installment plan, at a rate equal only to what the borrower would ordinarily be compelled to pay as rent for the use and occupation of the premises, is an advantage which would not be offered by the ordinary lender of money—that is, by one loaning money as a straight loan at a straight rate of interest.

"But if there be unfairness in the scheme as practiced by these associations in their dealings with their patrons, the fundamental cause of the difficulty lies with the law as the legislature has promulgated it."

Within due time, the respondents applied to this court for an order that the cause be heard and determined here. In their application they state that the opinion filed in the appellate court correctly states the facts, so far as it does state the facts. They expressly "accept as unquestioned and undoubted law every principle announced by that court in support of its judgment." Under these circumstances, we may well rest our disposition of the matters considered in the appellate court on the grounds there stated, and we accordingly approve and adopt the foregoing portions of the opinion of that court.

It is, however, contended by the respondents that the court of appeal overlooked a material fact, alleged by respondents and found in their favor by the trial court. The plaintiffs' answer to the cross-complaint averred that in its circulars and prospectuses the defendant represented that "the history of the previous operations of said cross-complainant corporation showed that the dividends and accumulations on the shares of

the capital stock of the said corporation so purchased would be sufficient, together with said monthly payment of sixty cents per share, to make full and complete payment for all of said shares of stock so purchased within said seven years from the date of said purchase." It was further alleged that the defendant knew that this representation was false. The court found specifically that the defendant made this statement with knowledge of its falsity.

The rule that mere expressions of opinion cannot constitute actionable fraud is, no doubt, subject to some qualification. A party inducing another to contract in reliance upon estimates or opinions professedly based upon alleged facts known to the party stating them to be non-existent will not be permitted to escape responsibility by the plea that he was merely declaring his opinion. A statement that the history of the defendant showed that its stock would mature in seven years is clearly a statement of fact, and, if falsely made and relied on, would furnish ground for relief to the party misled by it.

But the most careful scrutiny of the record fails to disclose any evidence to support the finding that any such representation was made by the appellant. The claim is that the alleged statement of the defendant is to be found in the circular or prospectus brought to the attention of the plaintiff. Some of the contents of this pamphlet are set forth in the opinion filed in the district court of appeal. As is there said, the tables illustrating the result of an investment amount to nothing more than "speculation or as involving a mere expression of opinion of the officers of the appellant upon the proposition." The circular contains only two statements which refer in any way to past history or experience. Under the head "Its system," it is stated that "The system of this association is the result of years of experience and is practical, not theoretical." This is followed by other paragraphs devoted to the subjects of "State supervision," "Features," "Explanatory" (showing in detail the plan of investment), "Rent or Home Purchase," "Agreement between the shareholder and the association," "Withdrawals," etc. Obviously the sentence quoted does not purport to refer to any stated period or time of maturity of shares. It deals solely with the "System" of the association, a system which, under the law and as shown on the face of the contract of the respondents, precludes the

idea of stock maturing in a fixed number of years. The language cannot be construed to mean any more than that the defendant's plan of operation is not a new or untried one.

The other statement relating to experience falls equally short of supporting the finding. In a part of the circular devoted, in the main, to general maxims extolling the practice of thrift and economy, it is said that "experience has shown that some system is necessary to induce the majority of persons to lay aside a part of their income. The most efficient system will combine regularity, safety, and profit. The·experience of the past fifty years shows that no system of investment has been so safe and so profitable as that adopted by this association." We find in this language nothing calculated to convey the impression that the experience of the defendant had shown that its stock had matured or would mature in seven years. Furthermore, under any construction that may be given to it, the declaration that the defendant's system was the safest and most profitable mode of investment could not have been understood as derived from its own experience. The conclusion is, as the prospectus declares, based on fifty years' experience, while the circular itself shows that the defendant association had been in existence for a much shorter period.

The statement on motion for new trial properly challenges the sufficiency of the evidence to sustain the finding under discussion. For the reasons stated, it must be held that the finding is not supported, and that it furnishes no ground for reaching a conclusion different from that announced by the appellate court.

The order denying a new trial ·is reversed.