(No. 23263.—

THE ELDORADO BUILDING AND LOAN ASSOCIATION *et al.* Appellants, *vs.* MARGERY STRICKLIN *et al.* Appellees.

*Opinion filed June 10, 1936—Rehearing denied October 7, 1936.*

138

HARRY ANDERSON, and CHARLES H. THOMPSON, for appellants.

D. F. MOORE, and S. D. WISE, for appellees.

Mr. CHIEF JUSTICE HERRICK delivered the opinion of the court:

This cause is before us on leave to appeal from a judgment of the Appellate Court for the Fourth District from a judgment rendered by that court (*Stricklin* v. *Building*

*and Loan Ass'n,* 280 Ill. App. 580,) reversing a decree of the circuit court of Saline county foreclosing a mortgage made by Margery Stricklin and her husband, Dennis Stricklin, appellees, (hereinafter called defendants,) to the Eldorado Building and Loan Association, one of the appellants, (hereinafter referred to as the association).

The association was organized in 1917 under the Mutual Building, Loan and Homestead Associations act of 1879 as subsequently amended. (Ill. State Bar Stat. 1935, chap. 32, sec. 1, p. 932.) On April 4, 1924, defendants made written application to the association for a loan, in which application, among other things, it was stated: "I agree to comply with all the requirements of the association as defined by its rules, charter and by-laws." The application was approved by the board of directors. On June 11 following, defendants became members of the association by subscribing for fifty shares of stock in series 15, of the par value of $100 each, and which series under the by-laws of the association became effective as of April 1, 1924. On the same day defendants executed and delivered their promissory note and agreement, by which they acknowledged themselves indebted to the association in the sum of $5000, money loaned to them under its by-laws on account of fifty shares of its capital stock, in consideration of which they agreed to pay to the association $25 monthly dues, $25 monthly premiums and $25 monthly interest "on or before the first Monday of each and every month thereafter, until said loan, with interest thereon, shall have been liquidated under the charter and by-laws of said association, by the said shares of capital stock aforementioned having reached its par value." To secure the payment of this indebtedness defendants assigned their certificate of stock to and executed to the association a mortgage on real estate in Eldorado, Illinois. On February 11, 1934, defendants then being more than thirty months in arrears in their required monthly payments, the board of directors of the

association, at a regular meeting thereof, adopted a resolution declaring a forfeiture of defendants' stock and directing a foreclosure of the mortgage. Defendants contested the foreclosure.

Subsequent to making the mortgage defendants had paid the association a total of $6375, and contend, since such sum was in excess of the principal, that no part of the loan was unpaid. The principal contention relates to the amount of premium charged. Defendants take the position that the whole amount of premium which the association could legally exact under the statute and under its by-laws on a loan of $5000 was $300. It is admitted defendants paid eighty-five monthly payments of premium, aggregating $2125.

The applicable by-law of the association at the time the loan was made, among other things, provided: "The money in the treasury shall be loaned at a premium of six per cent, which premium shall be paid in equal installments, and in addition to the premium such loan shall bear interest at the rate of six per cent per annum, which premium and interest shall be due and payable in advance on the first Monday of each month at the same time the dues on such stock are due and payable, and which payment of premiums and interest shall be made during the existence of the shares of stock borrowed upon or until such loan is re-paid." This by-law was adopted by the association pursuant to the provisions of section 19 of the act under which it was organized, which, so far as material here, is: "An association may * * * loan its money at a rate of interest, or interest and premium, to be fixed by the directors," etc. Ill. State Bar Stat. 1935, chap. 32, par. 393, p. 938.

It is charged the association directors did not fix the rate of interest and premium. However, effective June 26, 1933, (being subsequent to our decision in *Anna Loan and Improvement Co. v. Dorris,* 342 Ill. 567, cited by defendants,) the General Assembly enacted a validating act, which,

among other things, provided: "Although the statute provides for the rate of interest, or interest and premium to be fixed by the directors, such loan, if otherwise legally made is hereby validated and legalized." (Ill. State Bar Stat. 1935, chap. 32, sec. 1, p. 951.) The validity of such statute is not challenged.

Section 23 of the Building and Loan Association act provides: "Corporations organized under this act being of the nature of coöperative associations, therefore no interest, premiums, fines nor interest on such premiums that may accrue to said corporation, according to the provisions of this act, shall be deemed usurious," etc. (Ill. State Bar Stat. 1935, chap. 32, sec. 23, p. 940.) The language of this section does not purport to fix or limit the rate of interest and premiums that may be charged by an association organized under the provisions of the statute, but, on the contrary, expressly exempts such rates, when legally made, from the charge of usury.

The next question is whether the provision of the by-law pertaining to the payment of premiums authorized the requirement in the note for the payment of monthly premiums of $25 each "during the existence of the shares of stock borrowed upon or until such loan is re-paid." Defendants insist that the wording of the by-law, "the money * * * shall be loaned at a premium of six per cent, which premium shall be paid in equal installments," means that such premiums can be no more than six per cent of the amount borrowed—i. e., $300 on this loan—and that to require the payment of premiums of $25 per month "during the existence of the shares of stock borrowed upon" is contrary to and not warranted by the expression "at a premium of six per cent." They further urge that the limitation on the amount of premium is clearly manifested in the same by-law by the specific provision relative to interest—that such loan "shall bear interest at the rate of six per cent per annum"—asserting the words "rate * * * per annum"

were intended to differentiate between the amount of interest and the amount of premium to be paid; that the omission of the term "rate" and "per annum" in connection with the word "premium" limits the amount of premium to be paid to an aggregate sum representing six per cent of the total amount borrowed.

We stated in *Joy* v. *Ditto,* 356 Ill. 348, at page 357: "Courts will recognize and adopt the construction of ambiguous by-laws placed upon them by the corporation itself." And, as was held in *Baltimore Building and Loan Ass'n* v. *Powhatan Improvement Co.* 87 Md. 59, 39 Atl. 274, when in construing a by-law the design and intent of the framers can be ascertained, such design and intent must prevail. If the provision in the instant by-law, "at a premium of six per cent," stood alone, it is apparent a charge of ambiguity might be lodged against it, but in construing a by-law it is necessary to consider it in its entirety and not merely an isolated clause thereof. The further language of the by-law in question pertaining to the premium shows that such premium "shall be paid in equal installments * * * shall be due and payable in advance on the first Monday of each month * * * and * * * shall be made during the existence of the shares of stock borrowed upon or until such loan is re-paid." Precisely the same language in fixing the monthly installment and due date and the term for re-payment is applied in the by-law to the payment of interest. It is seen, therefore, the provisions of the by-law as to the amount of the premium to be paid clearly negative the amount thereof as being restricted to six per cent of the amount borrowed, otherwise the subsequent expression, "shall be made during the existence of the shares of stock borrowed upon," applying to both interest and premium alike, must be rejected. Both the association and defendants obviously placed that interpretation upon the by-law as evidenced by the terms of the mortgage note and agreement and the pay-

ment thereafter made by the defendants in compliance therewith. Our conclusion is that the contention of defendants as to the amount of premiums to be paid is not tenable and that premiums are collectible in accordance with the contract written into their promissory note.

Defendants also say the association had not in express terms dispensed with the provisions of section 19 of the statute requiring it, through its board of directors, to offer the money in its treasury for loans in regular open meeting to the member bidding the highest premium for the preference or priority of a loan, and that therefore the loan was made without statutory sanction. However, a by-law adopted by the association upon its organization expressly provided that loans to its members should be made on the basis of a specified fixed rate of premium, and no authority has been cited to us, and we know of none, requiring the adoption of a by-law in express terms dispensing with the offering of the association funds for loans in open meeting. The by-law of the association fixing the rate of premium by necessary implication dispensed with the offering of its money for loans in open meeting and was a sufficient compliance with section 19.

Defendants also urge that the interest rate of six per cent per annum provided for in the by-law means six per cent on the amount remaining unpaid from time to time. Defendants misapprehend the statutory plan under which interest is paid by a borrowing member. Under the statutory mutual building and loan plan the payments required to be made by a borrowing member are applied towards maturing his stock pledged to secure his loan, and are not installment payments to be credited in direct reduction of the principal of his loan. *Hotchkiss* v. *Norwood Park Ass'n*, 229 Ill. 248.

Defendants next assert that the association did not pay the taxes assessed against the property when due but permitted it to be sold for taxes, contrary to its by-laws and the

statute; that the amount paid by the association, as shown and charged against defendants, included not only the taxes but also interest and penalties thereon and cost of advertising the property as delinquent for non-payment of taxes, and that the amount of taxes could not be separated from the total, which included the above items. The relevant statute explicitly provides that if the borrower fails to do so the association may pay taxes, special assessments and premiums, together "with any interest or penalty as may have accrued thereon," together with interest thereon, and provides that the property of the borrower shall be security therefor. Ill. State Bar Stat. 1935, chap. 32, sec. 19, pp. 938, 939.

Defendants complain that in the hearing before the chancellor the association wrongfully charged against them interest and premium for that portion of the month of June prior to the date the loan was made and for all the months of February and March, 1934, together with fines for February and March, 1934. This claim of defendants is based on the debit and credit items shown on the association ledger sheet pertaining to defendants' loan and stock account appearing in exhibit 1 of the association introduced in evidence. The decree of the circuit court shows the chancellor found the sum of $3442.86 due the association from defendants, while the association claimed due it $4684.54, exclusive of solicitor's fees. It is self-evident from these facts that the chancellor did not charge these small disputed items against defendants, and therefore their claims relative thereto are without merit.

Lastly, defendants charge that the audit showing the book or surrender value of their stock, as determined by adding the profits distributed to the amount of dues paid, should not have been admitted in evidence because not prepared and certified as required by the association's by-laws. The certificate to the audit was technically incorrect in being made by a committee whose members were directors of

the association but it appears that a reliable accountant of long experience was employed in the preparation of the audit. No errors were pointed out therein and no showing made that defendants were in any way prejudiced thereby. We find no prejudicial error in the action of the chancellor in placing reliance upon the correctness of the book value of the stock as shown by the audit.

The judgment of the Appellate Court for the Fourth District is reversed and the decree of the circuit court of Saline county is affirmed.

*Judgment of Appellate Court reversed.*
*Decree of circuit court affirmed.*