Margery Stricklin and Dennis Stricklin, Appellants, v. Eldorado Building and Loan Association and James E. Raiburn, Appellees.

Heard in this court at the February term, 1935. Opinion filed June 8, 1935.

D. F. MOORE, of Benton, and S. D. WISE, of Harrisburg, for appellants.

CHARLES H. THOMPSON, of Harrisburg, and HARRY ANDERSON, of McLeansboro, for appellees.

MR. JUSTICE STONE delivered the opinion of the court.

Appellants, Margery Stricklin and Dennis Stricklin, were plaintiffs in a bill to redeem a mortgage and cross defendants in a suit to foreclose the mortgage. Appellees, Eldorado Building and Loan Association and James E. Raiburn, were plaintiffs in the bill to foreclose and defendants in the bill to redeem. The court below entered a decree declaring the sum of $3,442.86 due the association and granting the foreclosure of the mortgage. The items of account in dispute are many, and the findings in the decree are not specific with respect to all items composing the account and the court has not allowed the sum claimed by the association. It is therefore impossible to tell what items make up the decree. However, the amount of the decree could not be made up without certain of the larger items involved. As this court is of the opinion that the decree must be reversed, and a new accounting taken, and as it does not appear in every case whether an item in evidence has been allowed or disallowed, it will be necessary to state with respect to the items in evidence, about which a question has been raised, whether they may be properly included in a decree.

Appellants became members of the association on June 11, 1924, at which time they agreed to purchase 50 shares of stock of a par value of $100 each, and at which time they borrowed the sum of $5,000 from the association, giving a mortgage on their home to secure the loan, and giving their note by which they agreed to pay the association as follows: ''$25 monthly dues upon said shares of stock aforesaid, the sum of $25 monthly premiums and also the sum of $25 interest monthly, upon said loan, all on or before

the first Monday of each and every month thereafter, until said loan and interest shall have been liquidated under the charter and by-laws of said Association by the shares of stock aforementioned having reached its par value.''

At the time the loan was made the by-laws then in force among other things provided:

''The money in the treasury shall be loaned at a premium of six per cent, which premium shall be paid in equal installments, and in addition to the premium such loan shall bear interest at the rate of six per cent per annum, which premium and interest shall be due and payable in advance on the first Monday of each month at the same time the dues on such stock are due and payable, and which payment of premiums and interest shall be made during the existence of the shares of stock borrowed upon or until such loan is repaid.''

The most serious objection to the decree relates to the allowance of the premium charged on the loan. Appellants contend that the loan, which provides for a premium of $25 per month until the stock reaches par value, is not in accordance with the by-law quoted which, they contend, provides for a premium of six per cent of the loan, or $300 to be paid in instalments. We think this position is correct.

Building and loan associations are exempted from the usury laws, and are permitted to charge premiums to borrowers for the privilege of obtaining loans, so long as such premiums conform to the statute and the by-laws of the association. However, since such associations are made a special class, and exempted from the salutary usury laws it is essential that they be held to strict compliance with the statute and their by-laws. The by-laws must clearly justify the premiums charged. A premium not fixed by the by-laws under the former rule, or board of directors (after bids have

been abolished by by-laws) under the present rule, is not fixed in accordance with the statute. The exemption from usury laws given these associations follows only from strict observance of the statute. *Anna Loan & Improvement Co. v. Dorris,* 342 Ill. 567, 572.

Here the premium provided in the by-law is "six per cent." It is not stated that the premium shall be at the "rate" of six per cent, nor that it shall be six per cent per annum. Six per cent does not mean six per cent per annum. Certain corporations are permitted by our statutes to lend money at the rate of three and one-half per cent per month, but it would hardly be contended that "interest at the rate of three and one-half per cent" in a note payable to such a corporation meant "three and one-half per cent per month." The premium provided in this by-law is to be paid in "equal instalments." The natural meaning of instalment is a portion of a whole, a part of a definite sum. Perhaps a stronger indication of the meaning of the language used in connection with the premium fixed by this by-law can be obtained from the contrast between it and the language used in the same by-law to describe the interest charged. The by-law provides: "Such loan shall bear interest at the *rate* of six per cent *per annum.*" The difference between the premium described and the interest described is clear. Appellees stress the fact that under the by-law premiums were to be paid during the existence of the shares of stock. It would seem to be a satisfactory explanation that the by-law contemplated repayment in accordance with its terms thus making the number of instalments definite and the premium definite. In any event, if there is an ambiguity in the by-law it should be resolved against the association where it seeks to impose an exorbitant rate of interest.

Since there was a contract for the illegal premium and since there was no agreement to pay a premium

in accordance with the by-laws, all charges for premium must be expunged from the account. The interest charge, however, will be allowed to stand except as to interest for 11 days hereinafter referred to. Where parts of a contract are severable and legal interest is separately provided for, a court of equity will not follow the rule at law of forfeiture of all interest for usury, but will permit that part of the contract providing a legal rate of interest to stand. *Lurton v. Jacksonville Loan & Bldg. Ass'n,* 187 Ill. 141.

Appellants contend that they were charged interest for 11 days in June, 1924, before the loan was actually made, and for one month after the association had, by resolution of the board of directors, elected to terminate the loan and forfeit the stock. They also charge that fines were imposed for two months following the forfeiture of the stock. We think the contention correct with respect to the interest charged prior to the making of the loan. Appellants are likewise correct in their position with respect to fines charged subsequent to the forfeiture of the stock. *Armstrong v. Douglas Park Bldg. Ass'n,* 176 Ill. 298, 301; *Juergens v. Cobe,* 99 Ill. App. 156, 160. On the other hand there seems to be no valid reason why interest on the unpaid loan may not be charged after the stock is forfeited. The obligation to pay interest on the money borrowed is not dependent on membership in the association. In this respect it differs from the obligation to pay fines which is dependent on such membership.

Appellants further contend that the provision in the by-law requiring interest at the "rate of six per cent per annum" means six per cent per annum on the unpaid balance, and therefore the interest charge of $25 per month is not in accordance with the by-law. Even supposing this construction of the by-law is the normal one it does not follow that the charge of $25 per month is incorrect. Appellants make the false

assumption that the $25 which is paid each month for "dues" goes to reduce the principal of the loan. The "dues" are partial payments on stock, and entitle the member to earnings on stock. If the dues were applied to the principal of the loan there would be nothing to apply in payment of the stock. The balance of the loan remains the same until the stock reaches its par value, at which time the stock is canceled and applied in payment of the loan.

Appellants make a similar contention with respect to dues charged on the stock. They say that to charge them with the full principal of the loan and with $25 per month arrears in dues is to duplicate charges of principal. Here again it is necessary to make a distinction between the loan and the contract to purchase the stock. The dues go hand in hand with membership in the association. They increase the value of the stock. Should appellants be entitled to credit for full value of their stock which value is made up of dues of members and other earnings of the association, and at the same time be permitted to apply their dues toward payment of the principal of the loan? We think this would be unfair to other members. The chancellor was correct in not permitting payments of dues to be credited to the principal of the loan. It follows also that no dues can be charged after forfeiture of the stock.

It is next argued that the association should not be entitled to penalties paid in the redemption of taxes for the reason that the by-laws of the association require it to pay the taxes when due and unpaid, and charge interest thereon. We do not think that this by-law amounts to a contract with the borrower that the association will prevent tax defaults. The association is entitled to interest on whatever amounts were necessary to redeem the tax defaults, unless it shall appear upon the new accounting that at the time the

taxes were paid the association had on hand money of the borrower in the form of overpayments. It is also contended that there is no evidence to support a certain tax item of $186.04 alleged to have been paid September 29, 1933. This item does appear in that part of Exhibit I designated the loan account. There is testimony that that account is correct. This would seem to be sufficient to support the finding in the absence of any evidence to the contrary.

Appellants charge that the audit showing the value of the stock was improperly admitted because it was not made in accordance with the by-laws in that it is not based upon any proper accounts and in that it is certified by a committee who are directors of the corporation. This method of making the audit is technically incorrect. However, a reliable public accountant was hired and it does not appear that appellants suffered from the book value given the stock. We find no error in the action of the chancellor in relying on this estimate of book value.

The decree will have to be reversed for the errors mentioned and an account taken in accordance with the principles herein set forth.

*Reversed and remanded.*